# WRIGHT *v.* UNIVERSAL MARITIME SERVICE CORP. ET AL.

No. 97–889.   Argued October 7, 1998—Decided November 16, 1998

*Ray P. McClain* argued the cause for petitioner. With him on the briefs were *Elaine R. Jones, Theodore M. Shaw, Norman J. Chachkin,* and *Charles Stephen Ralston.*

*Deputy Solicitor General Underwood* argued the cause for the United States et al. as *amici curiae* urging reversal. With her on the brief were *Solicitor General Waxman, Acting Assistant Attorney General Hodgkiss, James A. Feldman, C. Gregory Stewart, Philip B. Sklover, Lorraine C. Davis,* and *Robert J. Gregory.*

*Charles A. Edwards* argued the cause and filed a brief for respondents.*

---

*Briefs of *amici curiae* urging reversal were filed for the Commonwealth of Massachusetts et al. by *Scott Harshbarger,* Attorney General of Massachusetts, *Richard Wayne Cole* and *Catherine C. Ziehl,* Assistant Attorneys General, *Grant Woods,* Attorney General of Arizona, *Judy Drickey-Prohow,* Assistant Attorney General, *Darrell V. McGraw,* Attorney General of West Virginia, *Mary C. Buchmelter,* Assistant Attorney General, and by the Attorneys General for their respective States as follows: *Winston Bryant* of Arkansas, *Richard Blumenthal* of Connecticut, *Alan G. Lance* of Idaho, *Thomas J. Miller* of Iowa, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Dennis C. Vacco* of New York, *Hardy Myers* of Oregon, *William Sorrell* of Vermont, and *Mark L. Early* of Virginia; for the American Civil Liberties Union et al. by *Louis M. Bograd, David S. Schwartz,* and *Steven R. Shapiro;* for the American Federation of Labor and Congress of Industrial Organizations et al. by *Laurence Gold, Jonathan P. Hiatt, James B. Coppess, Marsha S. Berzon, Thomas W. Gleason, Herzl S. Eisenstadt, James R. Watson,* and *Armand Derfner;* for the Lawyers' Committee for Civil Rights under Law et al. by *Paul W. Mollica, Thomas R. Meites, Barbara R. Arnwine, Thomas*

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the question whether a general arbitration clause in a collective-bargaining agreement (CBA) requires an employee to use the arbitration procedure for an alleged violation of the Americans with Disabilities Act of 1990 (ADA), 104 Stat. 327, 42 U. S. C. § 12101 *et seq.*

## I

In 1970, petitioner Ceasar Wright began working as a longshoreman in Charleston, South Carolina. He was a member of Local 1422 of the International Longshoremen's Association, AFL–CIO (Union), which uses a hiring hall to supply workers to several stevedore companies represented by the South Carolina Stevedores Association (SCSA). Clause 15(B) of the CBA between the Union and the SCSA provides in part as follows: "Matters under dispute which cannot be promptly settled between the Local and an individual Employer shall, no later than 48 hours after such discussion, be referred in writing covering the entire grievance to a Port Grievance Committee . . . ." App. 43a. If the Port Grievance Committee, which is evenly divided between representatives of labor and management, cannot reach an

---

*J. Henderson, Richard T. Seymour, Teresa A. Ferrante, Cathy Ventrell-Monsees,* and *Sally Dunaway;* for the National Academy of Arbitrators by *David E. Feller;* and for the National Employment Lawyers Association et al. by *Cliff Palefsky* and *Paula A. Brantner.*

Briefs of *amici curiae* urging affirmance were filed for the Equal Employment Advisory Council et al. by *Robert E. Williams, Ann Elizabeth Reesman,* and *Daniel V. Yager;* for the National Association of Manufacturers by *Clifford M. Sloan, Samuel D. Walker, Jan S. Amundson,* and *Quentin Riegel;* and for the National Association of Waterfront Employers by *Charles T. Carroll, Jr.,* and *F. Edwin Froelich.*

Briefs of *amici curiae* were filed for the Chamber of Commerce of the United States by *Steven B. Berlin, Mark A. de Bernardo, Garry G. Mathiason, Stephen A. Bokat, Robin S. Conrad,* and *Sussan Mahallati Kysela;* and for the Securities Industry Association by *Michael Delikat, Gary Siniscalco, Lisa K. McClelland,* and *Stuart J. Kaswell.*

agreement within five days of receiving the complaint, then the dispute must be referred to a District Grievance Committee, which is also evenly divided between the two sides. The CBA provides that a majority decision of the District Grievance Committee "shall be final and binding." *Id.*, at 44a. If the District Grievance Committee cannot reach a majority decision within 72 hours after meeting, then the committee must employ a professional arbitrator.

Clause 15(F) of the CBA provides as follows:

> "The Union agrees that this Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment and that during the term of this Agreement the Employers will not be required to negotiate on any further matters affecting these or other subjects not specifically set forth in this Agreement. Anything not contained in this Agreement shall not be construed as being part of this Agreement. All past port practices being observed may be reduced to writing in each port." *Id.*, at 45a–46a.

Finally, Clause 17 of the CBA states: "It is the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State Law." *Id.*, at 47a.

Wright was also subject to the Longshore Seniority Plan, which contained its own grievance provision, reading as follows: "Any dispute concerning or arising out of the terms and/or conditions of this Agreement, or dispute involving the interpretation or application of this Agreement, or dispute arising out of any rule adopted for its implementation, shall be referred to the Seniority Board." *Id.*, at 48a. The Seniority Board is equally divided between labor and management representatives. If the board reaches agreement by majority vote, then that determination is final and binding. If the board cannot resolve the dispute, then the Union and

the SCSA each choose a person, and this "Committee of two" makes a final determination.

On February 18, 1992, while Wright was working for respondent Stevens Shipping and Terminal Company (Stevens), he injured his right heel and his back. He sought compensation from Stevens for permanent disability under the Longshore and Harbor Workers' Compensation Act, 44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.*, and ultimately settled the claim for $250,000 and $10,000 in attorney's fees. Wright was also awarded Social Security disability benefits.

In January 1995, Wright returned to the Union hiring hall and asked to be referred for work. (At some point he obtained a written note from his doctor approving such activity.) Between January 2 and January 11, Wright worked for four stevedoring companies, none of which complained about his performance. When, however, the stevedoring companies realized that Wright had previously settled a claim for permanent disability, they informed the Union that they would not accept Wright for employment, because a person certified as permanently disabled (which they regarded Wright to be) is not qualified to perform longshore work under the CBA. The Union responded that the employers had misconstrued the CBA, suggested that the ADA entitled Wright to return to work if he could perform his duties, and asserted that refusing Wright employment would constitute a "lock-out" in violation of the CBA.

When Wright found out that the stevedoring companies would no longer accept him for employment, he contacted the Union to ask how he could get back to work. Wright claims that instead of suggesting the filing of a grievance, the Union told him to obtain counsel and file a claim under the ADA. Wright hired an attorney and eventually filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and the South Carolina State Human Affairs Commission, alleging that the stevedoring

companies and the SCSA had violated the ADA by refusing him work. In October 1995, Wright received a right-to-sue letter from the EEOC.

In January 1996, Wright filed a complaint against the SCSA and six individual stevedoring companies in the United States District Court for the District of South Carolina. Respondents' answer asserted various affirmative defenses, including Wright's failure to exhaust his remedies under the CBA and the Seniority Plan. After discovery, respondents moved for summary judgment and Wright moved for partial summary judgment with respect to some of respondents' defenses. A Magistrate Judge recommended that the District Court dismiss the case without prejudice because Wright had failed to pursue the grievance procedure provided by the CBA. The District Court adopted the report and recommendation and subsequently rejected Wright's motion for reconsideration. The United States Court of Appeals for the Fourth Circuit affirmed, see No. 96–2850 (July 29, 1997), judgt. order reported at 121 F. 3d 702, relying upon its earlier decision in *Austin* v. *Owens-Brockway Glass Container, Inc.*, 78 F. 3d 875, cert. denied, 519 U. S. 980 (1996), which in turn had relied upon our decision in *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20 (1991). We granted certiorari, 522 U. S. 1146 (1998).

## II

In this case, the Fourth Circuit concluded that the general arbitration provision in the CBA governing Wright's employment was sufficiently broad to encompass a statutory claim arising under the ADA, and that such a provision was enforceable. The latter conclusion brings into question two lines of our case law. The first is represented by *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36 (1974), which held that an employee does not forfeit his right to a judicial forum for claimed discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42

U. S. C. § 2000e *et seq.*, if "he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." 415 U. S., at 49. In rejecting the argument that the doctrine of election of remedies barred the Title VII lawsuit, we reasoned that a grievance is designed to vindicate a "contractual right" under a CBA, while a lawsuit under Title VII asserts "independent statutory rights accorded by Congress." *Id.*, at 49–50. The statutory cause of action was not waived by the union's agreement to the arbitration provision of the CBA, since "there can be no prospective waiver of an employee's rights under Title VII." *Id.*, at 51. We have followed the holding of *Gardner-Denver* in deciding the effect of CBA arbitration upon employee claims under other statutes. See *McDonald* v. *West Branch*, 466 U. S. 284 (1984) (claim under Rev. Stat. § 1979, 42 U. S. C. § 1983); *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U. S. 728 (1981) (claim under Fair Labor Standards Act of 1938, 29 U. S. C. § 201 *et seq.*).

The second line of cases implicated here is represented by *Gilmer* v. *Interstate/Johnson Lane Corp.*, *supra*, which held that a claim brought under the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U. S. C. § 621 *et seq.*, could be subject to compulsory arbitration pursuant to an arbitration provision in a securities registration form. Relying upon the federal policy favoring arbitration embodied in the Federal Arbitration Act (FAA), 9 U. S. C. § 1 *et seq.*, we said that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." 500 U. S., at 26 (citing *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U. S. 477 (1989); *Shearson/American Express Inc.* v. *McMahon*, 482 U. S. 220 (1987); *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614 (1985)).

There is obviously some tension between these two lines of cases. Whereas *Gardner-Denver* stated that "an employee's

rights under Title VII are not susceptible of prospective waiver," 415 U. S., at 51–52, *Gilmer* held that the right to a federal judicial forum for an ADEA claim could be waived. Petitioner and the United States as *amicus* would have us reconcile the lines of authority by maintaining that federal forum rights cannot be waived in union-negotiated CBAs even if they can be waived in individually executed contracts—a distinction that assuredly finds support in the text of *Gilmer*, see 500 U. S., at 26, 35. Respondents and their *amici*, on the other hand, contend that the real difference between *Gardner-Denver* and *Gilmer* is the radical change, over two decades, in the Court's receptivity to arbitration, leading *Gilmer* to affirm that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," 500 U. S., at 26 (internal quotation marks and citation omitted); *Gilmer*, they argue, has sufficiently undermined *Gardner-Denver* that a union *can* waive employees' rights to a judicial forum. Although, as will appear, we find *Gardner-Denver* and *Gilmer* relevant for various purposes to the case before us, we find it unnecessary to resolve the question of the validity of a union-negotiated waiver, since it is apparent to us, on the facts and arguments presented here, that no such waiver has occurred.

## III

In asserting the existence of an agreement to arbitrate the ADA claim, respondents rely upon the presumption of arbitrability this Court has found in § 301 of the Labor Management Relations Act, 1947 (LMRA), 61 Stat. 156, 29 U. S. C. § 185.[1] See generally *Steelworkers* v. *Enterprise*

---

[1] We have also discerned a presumption of arbitrability under the FAA, 9 U. S. C. § 1 *et seq.* See *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 626 (1985). Petitioner argued that the FAA

*Wheel & Car Corp.*, 363 U. S. 593 (1960); *Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564 (1960); *Steelworkers* v. *Warrior & Gulf Nav. Co.*, 363 U. S. 574 (1960). In collective-bargaining agreements, we have said, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Technologies, Inc.* v. *Communications Workers*, 475 U. S. 643, 650 (1986) (quoting *Warrior & Gulf, supra*, at 582–583).

That presumption, however, does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than courts *to interpret the terms of a CBA.* See *AT&T Technologies, supra*, at 650; *Warrior & Gulf, supra*, at 581–582. This rationale finds support in the very text of the LMRA, which announces that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising *over the application or interpretation of an existing collective-bargaining agreement.*" 29 U. S. C. § 173(d) (emphasis added). The dispute in the present case, however, ultimately concerns not the application or

---

does not apply to this case, see Brief for Petitioner 43–44, and asserted that respondents "have not argued at any stage of this case that the F. A. A. applies," *id.*, at 43. Respondents did not dispute the latter assertion, nor did they argue the applicability of the FAA before us; rather, they contended that it makes no difference whether the FAA applies, since the FAA presumption and the LMRA presumption are the same, see Brief for Respondents 12; Tr. of Oral Arg. 42–43. Finally, the Fourth Circuit, while it cited an FAA case, *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 24–25 (1983), did not explicitly rely upon the FAA—presumably because it has held elsewhere that the FAA does not apply to CBAs, see *Austin* v. *Owens-Brockway Glass Container, Inc.*, 78 F. 3d 875, 879 (CA4), cert. denied, 519 U. S. 980 (1996). In these circumstances, we decline to consider the applicability of the FAA to the present case.

interpretation of any CBA, but the meaning of a federal statute. The cause of action Wright asserts arises not out of contract, but out of the ADA, and is distinct from any right conferred by the collective-bargaining agreement. See *Gilmer, supra*, at 34; *Barrentine*, 450 U. S., at 737; *Gardner-Denver, supra*, at 49–50. To be sure, respondents argue that Wright is not qualified for his position as the CBA requires, but even if that were true he would *still* prevail if the refusal to hire violated the ADA.

Nor is the statutory (as opposed to contractual) focus of the claim altered by the fact that Clause 17 of the CBA recites it to be "the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State Law." App. 47a. As we discuss below in Part IV, this does not incorporate the ADA by reference. Even if it did so, however—thereby creating a contractual right that is coextensive with the federal statutory right—the ultimate question for the arbitrator would be not what the parties have agreed to, but what federal law requires; and that is not a question which should be *presumed* to be included within the arbitration requirement. Application of that principle is unaffected by the fact that the CBA in this case, unlike the one in *Gardner-Denver*, does not expressly limit the arbitrator to interpreting and applying the contract. The *presumption* only extends that far, whether or not the text of the agreement is similarly limited. It may well be that ordinary textual analysis of a CBA will show that matters which go beyond the interpretation and application of contract terms are subject to arbitration; but they will not be *presumed* to be so.

## IV

Not only is petitioner's statutory claim not subject to a presumption of arbitrability; we think any CBA requirement to arbitrate it must be particularly clear. In *Metropolitan Edison Co.* v. *NLRB*, 460 U. S. 693 (1983), we stated that a

union could waive its officers' statutory right under § 8(a)(3) of the National Labor Relations Act, 29 U. S. C. § 158(a)(3), to be free of antiunion discrimination, but we held that such a waiver must be clear and unmistakable. "[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable." 460 U. S., at 708; see also *Livadas* v. *Bradshaw*, 512 U. S. 107, 125 (1994) (dictum); *Lingle* v. *Norge Div. of Magic Chef, Inc.*, 486 U. S. 399, 409, n. 9 (1988) (dictum); cf. *Mastro Plastics Corp.* v. *NLRB*, 350 U. S. 270, 283 (1956).

We think the same standard applicable to a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination. Although that is not a substantive right, see *Gilmer*, 500 U. S., at 26, and whether or not *Gardner-Denver*'s seemingly absolute prohibition of union waiver of employees' federal forum rights survives *Gilmer*, *Gardner-Denver* at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA. The CBA in this case does not meet that standard. Its arbitration clause is very general, providing for arbitration of "[m]atters under dispute," App. 43a—which could be understood to mean matters in dispute under the contract. And the remainder of the contract contains no explicit incorporation of statutory antidiscrimination requirements. (Indeed, it does not even contain, as did the CBAs in *Austin* and *Gardner-Denver*, its own specific antidiscrimination provision.) The Fourth Circuit relied upon the fact that the equivalently broad arbitration clause in *Gilmer*—applying to "any dispute, claim or controversy"—was held to embrace federal statutory claims. But *Gilmer* involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented em-

ployees—and hence the "clear and unmistakable" standard was not applicable.

Respondents rely upon Clause 15(F) of the CBA, which states that "this Agreement is intended to cover all matters affecting wages, hours, and other terms and conditions of employment." App. 45a–46a. But even if this could, in isolation, be considered a clear and unmistakable incorporation of employment-discrimination laws (which is doubtful), it is surely deprived of that effect by the provision, later in the same paragraph, that "[a]nything not contained in this Agreement shall not be construed as being part of this Agreement." *Id.*, at 46a. Respondents also rely upon Clause 17 of the CBA, which states that "[i]t is the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State Law." *Id.*, at 47a. They argue that this requires the arbitrator to "apply legal definitions derived from the ADA" in determining whether Wright is "qualified" for employment within the meaning of the CBA. Brief for Respondents 39. Perhaps so, but that is not the same as making compliance with the ADA a contractual commitment that would be subject to the arbitration clause. This becomes crystal clear when one contrasts Clause 17 with the provision of the CBA which states that "[t]he requirements of the Occupations *[sic]* Safety and Health Administration shall be binding on both Parties." App. 46a. (Under respondents' interpretation of Clause 17, this OSHA provision would be superfluous.) Clause 17 seems to us nothing more than a recitation of the canon of construction which would in any event have been applied to the CBA—that an agreement should be interpreted in such fashion as to preserve, rather than destroy, its validity *(ut res magis valeat quam pereat).*

Finally, we do not find a clear and unmistakable waiver in the Longshore Seniority Plan. Like the CBA itself, the plan contains no antidiscrimination provision; and it specifi-

cally limits its grievance procedure to disputes related to the agreement.[2]

\*　　\*　　\*

We hold that the collective-bargaining agreement in this case does not contain a clear and unmistakable waiver of the covered employees' rights to a judicial forum for federal claims of employment discrimination. We do not reach the question whether such a waiver would be enforceable. The judgment of the Fourth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[2] Respondents and some of their *amici* rely upon the provision in the ADA which states that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this chapter." 42 U. S. C. § 12212. They rely upon it principally in connection with the question whether, under *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U. S. 20 (1991), a predispute agreement in a CBA to arbitrate employment-discrimination claims is enforceable—a question we do not reach. Our conclusion that a union waiver of employee rights to a federal judicial forum for employment-discrimination claims must be clear and unmistakable means that, absent a clear waiver, it is not "appropriate," within the meaning of this provision of the ADA, to find an agreement to arbitrate. We take no position, however, on the effect of this provision in cases where a CBA clearly encompasses employment-discrimination claims, or in areas outside collective bargaining.