**Stephanie PRINCE, Plaintiff,**

v.

**The COCA–COLA BOTTLING COMPANY OF NEW YORK, INC., Michael Drake and Leonard Erlanger, individually, Defendants.**

**No. 97 Civ. 9539(WCC).**

United States District Court,
S.D. New York.

March 3, 1999.

**290**

Lovett & Gould, White Plains, NY, Linda T. Alster–Nelson, of counsel, for plaintiff.

Pirro, Collier, Cohen & Halpern, LLP, White Plains, NY, Philip M. Halpern, of counsel, and Miller & Martin LLP, Chattanooga, TN, John R. Bode, Robert F. Goldman, of counsel, for defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

In this employment discrimination action, plaintiff Stephanie Prince ("Prince") asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. and the New York State Human Rights Law ("NYSHRL"), N.Y.Exec.Law § 296 against defendants Coca–Cola Bottling Company of New York, Inc., Michael Drake ("Drake") and Leonard Erlanger ("Erlanger"). Defendants move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order dismissing the complaint on the ground that the claims are the subject of a valid arbitration agreement; or alternatively, for an order pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. staying the proceedings pending plaintiff's exhaustion of the grievance and arbitration procedures under the applicable collective bargaining agreement. For the reasons discussed below, defendants' motion is denied.

### BACKGROUND

At all relevant times, plaintiff was an employee of defendant Coca–Cola Bottling Company of New York, Inc. ("CNY"). (Compl.¶3). Since June of 1994, plaintiff has also been a member of the Local 812 of the Soft Drink and Brewery Workers Union (the "Union"). (Prince Aff. ¶5). CNY and the Union entered into a Collective Bargaining Agreement dated December 9, 1996 (the "CBA") with an effective term of June 1, 1996 through May 31, 2006. (Prince Aff. ¶5 and Young Aff. ¶3, Ex. B). Although Prince did not take part in the negotiation of the CBA, the CBA governs her employment with CNY because she is a member of the Union. (Prince Aff. ¶5 and Young Aff. ¶3, Ex. B).

Article 41 of the CBA contains an "Equal Opportunity" clause which states:

In respect to employment, compensation, job assignments, layoffs, promotions and all other conditions of employment, neither the Company, nor the Union, will discriminate against any employee or applicant for employment, because of race, creed, color, age, sex, national origin, handicap or veteran status as defined under New York Laws and Federal Laws, orders and regulations pertaining to equal employment opportunity.

(Young Aff.Ex. B, Art. 41). A grievance procedure is subsequently outlined by the CBA as follows:

When differences arise between the Company, the Union or any employee of the Company as to any matter relating to wages, hours, or working conditions or employment, or any matter whatsoever including, the meaning, interpretation, application or violation of this Agreement, such differences shall be settled in the following manner.

*Step 1.* [sets forth a procedure for the submission of grievances to the relevant supervisor, first orally then in writing signed by the Shop Steward.]

*Step 2.* If no settlement is reached in Step 1, the Union or the Company may, within thirty (30) days after the conclusion of Step 1, request in writing that

the grievance be submitted to an impartial arbitrator in accordance with Article 19.

(Id. at Art. 44). The rules pertaining to arbitration of "all complaints, disputes, controversies or grievances between the Company and its employees" are set forth in Article 19. (Id. at Art. 19).

Prince alleges that, on a continuing basis and for months prior to December 1, 1997, she was subjected by her supervisors, Drake and Erlanger, to both a hostile work environment and *quid pro quo* sexual harassment in the workplace. (Compl.¶ 7). Prince claims that she reported the incidents to the Union which in turn notified the Human Resources Department of CNY, but that no remedial action was taken and she was subjected to retaliatory behavior by the defendants. (Compl.¶¶ 8–9). On or about December 1, 1997, Prince filed a charge of discrimination with the United States Equal Opportunity Commission (the "EEOC"). The EEOC issued a Notice of Right to Sue on December 22, 1997. (Compl.¶¶ 2, 10). Prince alleges that defendants retaliated against plaintiff for filing the EEOC charge by, *inter alia,* ordering her to leave the workplace and "stay home." (Compl.¶¶ 11–12).

Plaintiff commenced the instant action on December 28, 1997 claiming that defendants' conduct violated Title VII, NYSHRL and the New York common law of torts. Defendants now move for summary judgment, pursuant to Fed.R.Civ.P. 56, on the ground that the CBA requires plaintiff to arbitrate her employment discrimination claims prior to filing suit in federal court; or in the alternative, for a stay of the proceedings pursuant to Section 3 the FAA pending plaintiff's exhaustion of the grievance and arbitration procedures set forth in the CBA.

## DISCUSSION

### I. *Legal Standard*

Summary judgment may be granted only when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-moving party. *See id.,* 477 U.S. at 248, 106 S.Ct. 2505. All evidence must be viewed and all inferences must be drawn in the light most favorable to the non-moving party. *See id.,* 477 U.S. at 255, 106 S.Ct. 2505; *Pauling v. Secretary of Dep't of Interior,* 160 F.3d 133, 136 (2d Cir.1998).

### II. *Effect of the Collective Bargaining Agreement*

The material facts are not in dispute. Plaintiff has acknowledged membership in the Union but argues that, as a matter of law, an individual's right to a federal forum for her Title VII claims cannot be prospectively waived in a union-negotiated collective bargaining agreement. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (employee does not forfeit right to judicial forum for claimed discriminatory discharge in violation of Title VII by first pursuing grievance to final arbitration); *McDonald v. West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (§ 1983); *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (FLSA). Plaintiff contends that *Gardner–Denver* and its progeny dictate an absolute prohibition against union-waiver of employees' federal forum rights. Defendants, however, claim that *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), which held that a claim brought under the Age Discrimination in Employment Act of 1967 could be subject to compulsory arbitration pursuant to an arbitration provision in an individually executed securities registration form, effectively overruled *Gardner–Denver.*

The Supreme Court recently had an opportunity to resolve the perceived conflict between these cases in *Wright v. Universal Maritime Service Corp.,* —— U.S. ——, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) but declined to do so because the case at hand was capable of resolution on other grounds. More particularly, the Court found it "unnecessary to resolve the question of the validity of a union-negotiated waiver" because, on the facts of the case, it was "apparent . . . that no such waiver had occurred." *Id.,* 119 S.Ct. at 391. The Court did, however, clarify (if not recast) its prior holdings and provide lower courts with significant new guidance in this area.

In *Wright,* the Court held that a longshoreman was not barred from suing his employer under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., despite a general arbitration clause in the collective bargaining agreement negotiated between his employer and his union. Finding that Wright's cause of action arose not out of contract, but out of a federal statute, the Court held that claims involving rights distinct from those conferred by the collective-bargaining agreement are not subject to the presumption of arbitrability normally applied pursuant to § 301 of the Labor Management Relations Act.[1] Rather, courts should determine from an "ordinary textual analysis of a CBA" whether "matters which go beyond the interpretation and application of contract terms are subject to arbitration." *Wright,* —— U.S. at ——, 119 S.Ct. at 396. Indeed, where the matter beyond the interpretation and application of contract terms in a collective-bargaining agreement is a "union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination," the waiver "must be clear and unmistakable." *Id.* In support of this requirement, the *Wright* Court stated that:

whether or not *Gardner–Denver*'s seemingly absolute prohibition of union waiver of employees' forum rights survives *Gilmer, Gardner–Denver* at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA.

*Id.,* —— U.S. at ——, 119 S.Ct. at 396.

The Court held that the collective-bargaining agreement in *Wright* did not contain a clear and unmistakable waiver of plaintiff's federal forum rights because: (1) the clause providing for arbitration of "[m]atters under dispute" was too general and "could be understood to mean matters in dispute under the contract;" (2) the agreement contained "no explicit incorporation of statutory antidiscrimination requirements;" and (3) compliance with the ADA was not an express contractual commitment. *Id.,* —— U.S. at —— –– ——, 119 S.Ct. at 396–97.

Applying a similar textual analysis here, we find that the CBA fails to incorporate a clear and unmistakable waiver of federal forum rights notwithstanding the inclusion of a contractual antidiscrimination clause. Article 44 sets forth the grievance procedure to be followed:

[w]hen differences arise between the Company, the Union or any employee of the Company as to any matter relating to wages, hours, or working conditions or employment, or any matter whatsoever including, the meaning, interpretation, application or violation of this Agreement.

The broad language "differences . . . relating to . . . working conditions or employment, or any matter whatsoever" could certainly be said to encompass complaints about a hostile working environment and sexual harassment. However, "any matter

---

1. Where a dispute "ultimately concerns not the application or interpretation of any CBA, but the meaning of a federal statute," the presumption found in § 301 of the Labor Management Relations Act does not apply.

*Wright,* —— U.S. at ——, 119 S.Ct. at 396. The Court implied in dicta that the same rule should apply to the presumption of arbitrability under the FAA. *See id.,* 119 S.Ct. at 395 n. 1.

whatsoever" is immediately qualified by the phrase "including, the meaning, interpretation, application or violation of this Agreement." Therefore, as in *Wright*, the grievance procedure provision of the CBA could be understood to pertain only to matters controlled by the contract.

If a grievance is not resolved by the initial procedures detailed in Article 44, "the Union or the Company may, within thirty (30) days after the conclusion of Step 1, request in writing that the grievance be submitted to an impartial arbitrator in accordance with Article 19." The arbitration clause in Article 19 then applies to "all complaints, disputes, controversies or grievances between the Company and its employees." This language is more detailed than the "matters under dispute" phrase used in the collective-bargaining agreement in *Wright*. Further, it may be argued that the terms "disputes" and "controversies" encompass legal claims that may be heard before state and federal courts. Standing alone, however, this language does not constitute a clear and unmistakable waiver of federal forum rights with respect to claims under Title VII.

Defendants rely in large measure upon the "Equal Opportunity" clause at Article 41 which provides:

> In respect to employment, compensation, job assignments, layoffs, promotions and all other conditions of employment, neither the Company, nor the Union, will discriminate against any employee or applicant for employment, because of race, creed, color, age, sex, national origin, handicap or veteran status as defined under New York Laws and Federal Laws, orders and regulations pertaining to equal employment opportunity.

While it is commendable that the CBA contains its own antidiscrimination provision, this provision does not clearly and unmistakably constitute an "explicit incorporation of statutory antidiscrimination re-

quirements." *Wright,* —— U.S. at ——– ——, 119 S.Ct. at 396–97 (distinguishing between contractual antidiscrimination provision and incorporation of statutory requirements). Although the provision incorporates certain words used in employment discrimination statutes and requires these terms to be defined in accordance with the statutes, it does not identify the statutes by name or citation and fails to make full compliance with such statutes a "contractual commitment that would be subject to the arbitration clause." *Id.* 119 S.Ct. at 397.

One final parallel may be drawn with respect to the collective-bargaining agreement in *Wright:* both agreements contain provisions expressly requiring compliance with certain enumerated laws yet fail to list the applicable discrimination statutes among them. In *Wright,* the agreement stated "[t]he requirements of the occupations [sic] Safety and Health Administration shall be binding on both Parties." *Id.* No such requirement was mentioned with respect to the ADA. Here, Article 15 of the CBA, entitled "Compliance with Law" provides in pertinent part:

> The Company agrees to comply with the Worker's Compensation Law, The New York State Unemployment Insurance Act and the Federal Social Security Act.

It is a universal principle of interpretation that *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another). Article 15 makes no mention of Title VII; therefore, the CBA does not "mak[e] compliance with [Title VII] a contractual commitment that would be subject to the arbitration clause." *Id.* We hold that the CBA does not contain a clear and unmistakable waiver of plaintiff's right to a judicial forum for her federal statutory claims of employment discrimination.[2] Therefore, we do not reach the question of whether such a waiver would be enforceable.

**2.** The same rationale applies to plaintiff's state statutory claims under the NYSHRL

over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment or, in the alternative, for a stay of proceedings pending arbitration is denied.

SO ORDERED.