JUSTICE COTTER
dissenting.
¶35 I concur in Justice Leaphart’s dissent, and agree with his conclusion that the grievance procedure contained in the CBA was permissive rather than mandatory. I offer the following arguments in addition to those offered by Justice Leaphart.
¶36 The United States Supreme Court has held that a collective bargaining agreement requirement to arbitrate must be “clear and unmistakable.” In Wright v. Universal Maritime Service Corp. (1998), 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed. 2d 361, the Supreme Court vacated the judgment of the Fourth Circuit Court of Appeals to the effect that Wright was compelled to arbitrate his complaint of ADA violations via the procedure set forth in the CBA. In addressing the plaintiffs right to proceed in a judicial forum, the Court stated:
We will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is ‘explicitly stated.’ More succinctly, the waiver must be clear and unmistakable.
Wright, 525 U.S. at 80. (Internal citations omitted). The Court *477 concluded that one’s right to pursue a cause of action in a judicial forum was sufficiently important to be protected against less than explicit union waivers in a collective bargaining agreement. And, as addressed below, the right to a judicial remedy is both a statutorily and constitutionally protected right in Montana.
¶37 Here, the indication that an employee “may” file a formal written grievance is a far cry from the explicit waiver contemplated by the Supreme Court in Wright. Adding to the confusion created by the use of the term “may” is the fact that the CBA contains no “clear and unmistakable” waiver of one’s right to pursue a judicial remedy, which is guaranteed under Article II, Section 16 of the Montana Constitution. The very fact that the CBA is susceptible to the two interpretations offered in the Court’s Opinion and the dissents underscores the argument made here, for, if the language of the CBA purporting to exclude the right to pursue judicial remedies was “explicit,” we would not be at these crossroads now, after a trial and determination of the merits of plaintiffs’ claims. Thus, I would conclude that there was no effective waiver of the plaintiffs’ right to pursue their cause of action in a court of law contained in the CBA.
¶38 But, there is a far more compelling basis for finding the Court in error. MacKay and Orcutt’s right to pursue a judicial remedy here, in lieu of the pursuit of a grievance, is also guaranteed to them by statute. Section 39-31-306(5), MCA, which was relied upon by the plaintiffs in the District Court in their opposition to the State’s motion for summary judgment, provides in pertinent part:
An agreement to which a school is a party must contain a grievance procedure culminating in final and binding arbitration of unresolved and disputed interpretations of agreements. The aggrieved party may have the grievance or disputed interpretation of the agreement resolved either by final and binding arbitration or by any other available legal method and forum, but not by both. After a grievance has been submitted to arbitration, the grievant and the exclusive representative waive any right to pursue against the school an action or complaint that seeks the same remedy. If a grievant or the exclusive representative files a complaint or other action against the school, arbitration seeking the same remedy may not be filed or pursued under this section.
This statute clearly and unequivocally gives any aggrieved party with a claim against a school a right of election-grievance or judicial remedy. By filing suit against COT, which is undeniably “a school,” MacKay and Orcutt exercised their statutory right to pursue their *478 complaint in a court of law.
¶39 Justice Rice maintains in his Concurring Opinion that § 39-31-306(5), MCA, was “meant” to apply only to local elementary and secondary schools. With all due respect to Justice Rice’s legislative recollections, the reliability of which I have no reason to dispute, the statute contains no such limiting language. Section 39-31-306(1), MCA, addresses collective bargaining agreements reached by “public employers,” which is defined at § 39-31-104(10), MCA, to include, among others, school boards and the Board of Regents. Section 39-31-306(5), MCA, then goes on to carve out a special provision for collective bargaining agreements involving “schools.” It only stands to reason that this provision would apply equally to all those “public employers” involving “schools” that are referenced in Chapter 31, including the Board of Regents.
¶40 Moreover, if, as Justice Rice appears to argue, the Legislature did not intend for Title 39, Chapter 31 to apply to public employers that are colleges or universities, it neglected to so inform the Board of Regents. The CBA between the defendant Board of Regents and the union references in more than one location this very title and chapter as setting forth the governing law with respect to their mutual collective bargaining. See, e.g., Article 3.1 of the CBA (management rights set forth in § 39-31-303, MCA, are applicable unless specifically relinquished by the contract), and Article 5.1 (employees shall have the right to freely organize in accordance with § 39-31-301, MCA).
¶41 For the foregoing reasons, I submit this Court has erred in concluding that MacKay and Orcutt’s cases must be dismissed for their failure to pursue the grievance procedures set forth in the CBA. I strenuously dissent from the decision of this Court to reverse and remand with instructions to dismiss. I would reach the merits of the issues raised on appeal, and I would affirm the directed verdicts for MacKay and Orcutt.
JUSTICE REGNIER joins in the foregoing dissent.