FILED
United States Court of Appeals
Tenth Circuit

November 26, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LAFAYE ADAMS,

        Plaintiff - Appellant,

v.

FEDEX GROUND PACKAGE
SYSTEM, INC.; MARK HARRIS, in his
individual capacity and official capacity
as Senior Manager; MARK POOLE, in
his individual capacity and official
capacity as P&D Manager,

        Defendants - Appellees.

No. 13-1162
(D.C. No. 1:11-CV-02333-LTB-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

LaFaye Adams appeals pro se from a district court order that dismissed her

employment-discrimination suit against FedEx Ground Package System, Inc., and

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

two of the company's managers, Mark Harris and Mark Poole.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.

Adams "is an African-American, senior citizen."  R. at 416.  In April 2009, she and FedEx entered into a "Pick-up and Delivery Contractor Operating Agreement," *id.* at 228, designating Adams as an independent contractor assigned "to provide daily pick-up and delivery service on behalf of FedEx," *id.* at 232.

Adams bought a route and attempted to hire qualified drivers, but Harris and Poole allegedly "called and harassed and threatened [her] on whom [sic] and how [she] was going to service [her] route on a daily basis."  *Id.* at 421.  Four months after executing the operating agreement, FedEx terminated her services, citing a lack of integrity.

Pursuant to a binding-arbitration clause in the operating agreement, Adams demanded arbitration, claiming "[w]rongful termination and unclean hands" and "[r]etaliation and [d]iscrimination based on sex, race and age."  *Id.* at 262.  She sought $85,000 in "monetary compensation for the lost [sic] of [her] contract or reinstatement of contract and replacement of truck."  *Id.*

After a two-day arbitration hearing, the arbitrator "denie[d] the claims asserted by [Adams]," *id.* at 265, and ruled in favor of FedEx:

> the problems experienced by [FedEx] with [Adams] were overwhelming
> and unprecedented.  The problems included extreme levels of pick-up
> and delivery failures (e.g. the unchallenged testimony of Mark Harris
> was that the level of such situations from Mrs. Adams in four months

exceeded those experienced by all 24 other contractors in the entire year of 2010), cooperation issues[,] . . . failure of service issues[,] . . . serious integrity problems engaged in by employees of Mrs. Adams[,] . . . and noncompliance with federal regulatory standards . . . . These problems also . . . justified [FedEx's] termination of the contract here.

*Id.* at 264.

Seven months later, Adams filed suit pro se. In her second amended complaint, she did not attempt to vacate the arbitration award; rather, she alleged that FedEx, Harris, and Poole violated her rights under 42 U.S.C. § 1981; Title VII, 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621-634; the Colorado Consumer Protection Act (CCPA), Colo. Rev. Stat. §§ 6-1-101 to -115; and common law theories of fraud, defamation, "economic duress," R. at 454, and "declaratory judgment," *id.* at 457.[1] The defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).

A magistrate judge recommended granting the motion because, under the doctrine of issue preclusion, the issues raised by Adams's claims under § 1981, Title VII, the ADEA, and the common-law theories of fraud, economic duress, defamation, and declaratory judgment were decided in the prior arbitration proceeding. The magistrate judge further concluded that Adams's CCPA claim failed to state a claim for relief and that her claim for declaratory judgment failed on that ground as well as

---

[1] Adams also asserted violations of 42 U.S.C. § 1983 and Britain's Equality Act of 2010. On appeal, however, she has abandoned those claims. *See* Opening Aplt. Br. at 15.

the issue-preclusion ground.  The district court agreed and dismissed Adams's

complaint, prompting this appeal.

## DISCUSSION

### I.  Standards of Review

We review a district court's dismissal under Fed. R. Civ. P. 12(b)(6) de novo,

"accept[ing] as true all well-pleaded factual allegations in the complaint and

view[ing] them in the light most favorable to the plaintiff."  *Burnett v. Mortg. Elec.*

*Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  We

liberally construe a pro se litigant's pleadings, holding them "to a less stringent

standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991).

### II.  Issue Preclusion

Adams argues that issue preclusion is inapplicable because "an arbitration

proceeding cannot provide an adequate substitute for a judicial trial of important

federal issues."  Aplt. Opening Br. at 9.  We disagree.

In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59-60 (1974), the Supreme

Court held that arbitration decisions *arising from collective-bargaining agreements*

do not have preclusive effect in later Title VII litigation.  But the instant case does

not involve a collective-bargaining agreement, which is a critical distinction. *See Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 77 (1998); *see, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (holding, in a case not involving a collective-bargaining agreement, "that statutory claims [such as those brought under the ADEA] may be the subject of an arbitration agreement").

Thus, given that the arbitration agreement in Adams's case arose from the private Operating Agreement between Adams and FedEx, rather than from a collective-bargaining agreement, the results of the arbitration may have preclusive effect if the elements of issue preclusion are met.

Issue preclusion generally applies when four elements are satisfied:

(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004).

Adams argues that the first requirement of issue preclusion (identical issues) is absent because the arbitrator had "'the authority only to conclude whether the termination . . . was within the terms of th[e] Agreement.'" Aplt. Opening Br. at 10 (quoting R. at 256). But even so, she did not seek to vacate the arbitrator's award due to any lack of authority, and she had expressly submitted her sex, race, and age claims to arbitration. Those claims were clearly decided by the arbitrator, given his

statements that he was denying Adams's claims and finding in favor of FedEx because serious performance issues justified her termination.

Next, Adams contends that she lacked a full and fair opportunity to litigate her claims because the Operating Agreement limited discovery in the arbitration proceedings to damages. Adams demanded arbitration, however, despite that limitation, and she did not move afterward to vacate the arbitrator's award. Additionally, Adams does not suggest how the limitation on discovery affected her case. And we note that during the two-day arbitration hearing, Adams submitted evidence and supporting argument. Under these circumstances, Adams cannot assert that she was denied a full and fair opportunity to litigate her issues at arbitration.

We conclude that Adams is precluded from re-litigating the issue of whether FedEx terminated the Operating Agreement for an improper purpose. Moreover, with that issue conclusively established against Adams, her discrimination claims and her common-law claims for fraud, economic duress,[2] defamation, and declaratory judgment, necessarily fail because they are all premised on an improper termination.

### III. Colorado Consumer Protection Act (CCPA)

Adams alleged that FedEx's "business scheme" is deceptive in violation of the CCPA. R. at 450. Specifically, she claimed that "FedEx knew at the time it induced

---

[2]     In addition to being issue precluded, Adams's claim for economic duress appears infirm because it is a basis on which to void a contract, *see BDG Int'l, Inc. v. Bowers*, 303 P.3d 140, 145 (Colo. App. 2013), and Adams is not seeking to void the Operating Agreement.

[her] and over 3,000 . . . consumers into signing the 'Operation Agreement' (Employment Contract) that there was little to no likelihood that [she] would ever receive any benefit from being a 'business owner.'" *Id.*

An actionable CCPA claim requires:

(1) that the defendant engaged in an unfair or deceptive trade practice;
(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;
(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
(4) that the plaintiff suffered injury in fact to a legally protected interest; and
(5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). We conclude that Adams has failed to allege facts that would state a plausible CCPA claim. We focus on the most glaring infirmity: the public-impact requirement.

The CCPA requires "that the defendant's challenged practice [must] significantly impact[ ] the public as actual or potential consumers of the defendant's goods, services, or property." *Id.* at 149. Adams alleges she was a consumer who "bec[a]me an *employee* under the 'Operation Agreement' (*Employment* Contract)." R. at 450 (emphasis added). But the CCPA does not purport to provide a cause of action for private employment disputes. Indeed, "if a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA." *Rhino Linings*, 62 P.3d at 149.

- 7 -

"[W]hether a challenged practice significantly impacts the public within the context of a CCPA claim" depends on: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.* While Adams does allege that she and 3,000 other people signed Operating Agreements with FedEx, she did not indicate what percentage of those people were harmed. Further, her complaint addressed neither the relative sophistication and bargaining power of other consumers nor the prior and potential impacts on other consumers. Consequently, we conclude that Adams's CCPA fails for lack of allegations showing a significant public impact.

## IV. Declaratory Judgment

In addition to determining above that Adams's declaratory-judgment claim is issue precluded, we further determine that this claim fails because there are no rights left to be declared under her other failed claims.

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge