NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0144n.06

No. 23-3702

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 26, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| LONNIE MAXSON, | ) | |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| DALLAS BALDWIN, Sheriff, Frank County, Ohio, | ) ) ) | |
| Defendant-Appellee. | ) ) ) | OPINION |

Before: SUTTON, Chief Judge; STRANCH and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Lonnie Maxson, a one-time deputy sheriff in Franklin County, Ohio, filed this lawsuit against his former employer, Dallas Baldwin of the Franklin County Sheriff's Department, alleging disparate treatment and failure to accommodate under the Americans with Disabilities Act and analogous provisions of Ohio law. He alleges that he was fired based on his addictions to prescription drugs and alcohol, covered disabilities under the relevant statutes. The case presents a coverage question, however, because although the laws cover addiction, they exclude from coverage individuals engaged in the illegal use of drugs. Maxson's complaint acknowledges that he "used marijuana" and was terminated shortly after testing positive for the drug, pleading guilty to a misdemeanor for attempting to illegally obtain prescription opiates, and entering withdrawals that impaired his ability to function in the line of

duty. These allegations make clear that Maxson was engaged in illegal drug use when the Department fired him. The district court's dismissal of his complaint is therefore **AFFIRMED**.

## I. BACKGROUND

Lonnie Maxson was a deputy sheriff with Ohio's Franklin County Sheriff's Department until he was discharged in April 2021 after being arrested for attempting to illegally fill an opioid prescription, testing positive for marijuana, and pleading guilty to a misdemeanor charge. The misconduct that preceded Maxson's termination stems from a longstanding back condition that severely limits Maxson's mobility and for which Maxson was prescribed pain management medication. The condition ultimately led Maxson to an opioid addiction, an alcohol addiction, and marijuana use. Maxson alleges that the Department fired him on the basis of these addictions in violation of the Americans with Disabilities Act, or "the ADA," and Ohio law. The full story, which is drawn from Maxson's complaint and accepted at this stage as true, is laid out below.

Maxson's amended complaint chronicles his history of debilitating back pain. He injured his back for the first time at age 19 while pursuing a career as a professional motorcycle racer. The injury cost Maxson his racing career and much of his "ability to work, walk," and "lift items," leaving him with "two steel rods" in his back and "an artificial lower lumbar disk" in exchange. Maxson turned to law enforcement as a second career, but ultimately reinjured his back "during an incident with an inmate." The second injury further limited Maxson's "ability to work, walk, lift items, bend and stoop to pick up items and mentally focus."

Maxson's medical providers prescribed medication to help him manage the pain from his compounding injuries. The prescription facilitated Maxson's ability to "perform his duties as a corrections deputy," but he eventually "became addicted to the medications." Maxson supplemented his medication with alcohol use and ultimately developed an alcohol addiction. He

"also used marijuana to reduce the pain and accommodate the disabling effects of the medical condition."

Because of his opioid prescription, Maxson was enrolled in Ohio's Automated Rx Reporting System, a data collection program that monitors "all outpatient prescriptions for controlled substances" in the state.[1]  On February 18, 2021, Maxson triggered the system when he "was denied a prescription while he was at an Emergency Room."  A nurse reported the incident to Maxson's supervisors.  The next day, Maxson "was placed on administrative leave and given a 'reasonable suspicion' drug test."  The results of the test came back on March 5, 2021, and "were negative for all opiate substances but positive" for "marijuana."

A little over a month after Maxson's test results came back, on April 14, 2021, the Department "decided to pursue criminal charges against" him.  As part of the investigation, a lieutenant summoned Maxson for an interview on April 20, 2021.  The lieutenant reported that during the interview Maxson had "blood shot eyes, a red face," and "slow and slurred speech."  The lieutenant also observed that Maxson struggled "to communicate and understand" what was happening during the meeting.  The officer administered a second drug test, and this time Maxson was "negative for all tested substances."

At the end of Maxson's interview he was arrested, charged, and detained for "Deception to Obtain Dangerous Drugs."  He spent the following days in detention at the county jail, during which time he had multiple conversations with his mother that the Department monitored.  Maxson informed his mother in those calls that "he had a disability related to both alcohol and controlled substances and was going through withdrawal."  His voice remained "slow and slurred" during the conversations, as it had been in Maxson's interview.  Ultimately, on April 23, 2021, Maxson

---

[1] *See About*, Ohio Automated RX Reporting Sys., https://www.ohiopmp.gov/About.

pleaded guilty to a reduced charge of misdemeanor Attempt to Commit an Offense under Ohio Revised Code § 2923.02. He agreed to spend two years in the Helping Achieve Recovery Together program, or H.A.R.T., in exchange for the plea.

The next week, on April 28, 2021, the Department notified Maxson that his employment would be terminated effective April 30, 2021. The notice explained that Maxson's arrest, positive marijuana test, and misdemeanor guilty plea violated numerous Department regulations and that he was being terminated on that basis.[2]

Maxson responded by filing charges of disparate treatment and failure to accommodate with the Equal Employment Opportunity Commission, or "the EEOC," and, after receiving a right to sue letter, the operative complaint. Maxson's amended complaint alleges that the "true reason for" his "termination" was his addiction to prescription drugs and alcohol. He delineates two categories of circumstantial evidence to support his claim: allegations that officers without perceived disabilities retained their jobs after engaging in similar misconduct, and allegations that firing Maxson for, rather than assisting him with, his substance use violated Department policy. Maxson's complaint substantiates the first point by identifying three officers who he alleges were not perceived as having disabilities and who engaged in alcohol-related misconduct but were permitted to enroll in rehabilitation programs and keep their jobs. He supports the second point by introducing his collective bargaining agreement, which provides that when an officer encounters a "personal problem" that renders their "job performance" "unsatisfactory," the Department "shall" refer the employee to an employee assistance program. Maxson alleges that

---

[2] The violations cited in Maxson's termination notice were: "AR102:2 Obedience to Laws and Ordinances;" "AR102:3 Knowledge of Rules and Regulations, Laws;" "AR102:4 Violation of Rules and Regulations or Directives;" "AR102:15 Use of Official Position;" "AR102:19 Association with Wrong Elements;" "AR102.29 Unbecoming Conduct;" and AR102:43/43.1 Cause for Suspension or Dismissal: "Possession or Use of Drugs (on or off duty)" / "Obscene or Immoral Conduct" / "Unbecoming Conduct" / "Violations of Rules, Regulations, Policies and Procedure."

the Department followed this Policy in cases involving employees without perceived disabilities but not in his case.

Baldwin moved to dismiss Maxson's complaint on November 21, 2022, and on July 27, 2023, the district court granted the motion. Maxson appeals.

## II.  LEGAL STANDARD

We review de novo a district court's grant of a motion to dismiss. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff. *Keys*, 684 F.3d at 608.

## III.  ANALYSIS

Title I of the ADA prohibits covered employers from discriminating against qualified employees "on the basis of a disability." 42 U.S.C. § 12112(a). A claim of discriminatory discharge under this provision must plausibly allege that the plaintiff (1) had a disability; (2) was "qualified to perform" the job's "requirements with or without reasonable accommodation"; and (3) "would not have been discharged but for the disability." *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020). Addictions that substantially limit a major life activity are covered disabilities under the ADA, but an employee who is "currently engaging in the illegal use of drugs" when the employer "acts on the basis of such use" is not a "qualified individual" entitled to the

Act's protections. *See* 42 U.S.C. § 12114(a). Baldwin moved to dismiss on the grounds that Maxson's illegal use of marijuana excludes him from ADA coverage.[3]

Congress excluded employees engaged in illegal drug use from ADA coverage "to ensure that employers may discharge or deny employment to persons who illegally use drugs on that basis, without fear of being held liable for discrimination." H.R. Rep. No. 101-596, at 64 (1990). "The provision is not intended to be limited to persons who use drugs on the day of, or within a matter of days or weeks before, the employment action in question." *Id.* It instead applies to employees "whose illegal use of drugs occurred recently enough to justify a reasonable belief that" the employee's drug use was "current." *Id.* As the EEOC's technical assistance manual explains, drug use is current if it "occurred recently enough to justify an employer's reasonable belief that involvement with drugs is an on-going problem." *A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act* § 8.3 (1992).

There is no "bright-line rule" for determining when an employee is currently engaged in drug and alcohol use, but courts have repeatedly "found that persons who have used drugs in the weeks and months prior to their termination were current drug users under the ADA." *Peters v. Interstate Warehousing, Inc.*, No. 3:10-CV-00970, 2012 WL 10609, at \*6 (M.D. Tenn. Jan. 3, 2012). In *Lyons v. Johns Hopkins Hospital*, for example, a hospital could reasonably believe that a social worker's drug use was an ongoing problem when the employee tested positive for cocaine, had admittedly used cocaine at least "three to four times" during the course of his employment, failed to complete a rehabilitation program, and was fired four months after his positive test. No. CV CCB-15-0232, 2016 WL 7188441, at \*1, \*4 (D. Md. Dec. 12, 2016), *aff'd as modified*, 712 F.

---

[3] Maxson paired his discrimination claims under the ADA with analogous claims under Ohio Revised Code § 4112. The parties agree that the state-law claims are analyzed under the same standard as the ADA claims, so we treat them identically for purposes of this appeal. *Cf. Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

App'x 287 (4th Cir. 2018) (per curiam). Likewise, in *Johnson v. City of Columbus*, the City could justifiably believe that a sanitation worker's drug use was an ongoing problem when the employee acknowledged having a years-long addiction to marijuana, tested positive for the drug, entered an outpatient rehabilitation program, tested positive again, and was terminated two months later. No. C2-99-531, 2001 WL 605040, at *1, *6 (S.D. Ohio May 29, 2001). So too in *Zenor v. El Paso Healthcare System*, where a hospital system was reasonably concerned that a pharmacist's cocaine use posed an ongoing problem when the employee acknowledged having a cocaine addiction, missed a shift due to the residual effects of a cocaine injection, and was discharged five weeks later. 176 F.3d 847, 851-52, 857 (5th Cir. 1999). Courts consistently reach similar results when employees with a history of drug use are fired in the weeks or months following the employee's last known use. *Lyons*, 2016 WL 7188441, at *4.

Maxson's complaint in this case—the allegations in which we accept as true at the motion to dismiss stage—acknowledges that marijuana was a component of his pain management routine, explaining that at the time he was developing an addiction to prescription drugs and alcohol he also "used marijuana to reduce the pain and accommodate the disabling effects of" his back condition. Maxson also admits that he tested positive for marijuana on February 19, 2021. Although two months passed between the test and the discharge notice, just over one month elapsed between the time the Department obtained the test results and the time its internal affairs department opted to pursue criminal charges. Maxson apparently abstained from substance use during that period, alleging that he entered withdrawals. He then reportedly appeared at work with "blood shot eyes, a red face and slow and slurred speech," symptoms that limited his "ability to communicate and understand" while on the job. These symptoms started before Maxson was

arrested and detained and continued during his detention. The Department terminated Maxson just over one week after he first lost his ability to function on duty.

The Department notified Maxson that it was firing him because of his arrest, conviction, and marijuana use, which together violated several Department regulations, including a regulation barring officers from using or possessing drugs. The notice came two months after Maxson's positive drug test and following an investigation that began, at the latest, just over one month after Maxson's results came back. Maxson subsequently passed a second drug test, but that test was taken while he was experiencing withdrawals that he concedes interfered with his ability to function on the job. The Department fired Maxson less than two weeks after he appeared at work unable to communicate with his colleagues because of the severity of these withdrawals. Considering all these circumstances together, each of which is alleged on the face of Maxson's complaint, the Department's belief that Maxson's illegal drug use was an ongoing problem when it fired him on April 28, 2021, was reasonable.

Maxson offers two responses to this conclusion. He argues first that the allegations in the complaint are insufficient to demonstrate that he was currently engaged in marijuana use at the time he was discharged because he tested positive for marijuana only once two months before his termination. This overlooks that Maxson's complaint acknowledges he "used marijuana" as a more consistent tool of pain management in combination with his use of prescription medications and alcohol. It also ignores that Maxson experienced withdrawals as recently as one week before he was discharged, and that these withdrawals visibly inhibited his ability to function in the workplace. Maxson identifies no case in which an employee who tested positive for illegal drugs within two months of termination nevertheless established coverage under the ADA, much less a case in which an employee whose performance was impacted by illegal drug use within a week of

termination was nonetheless covered. So although "the question of whether drug use is effectively ongoing" is generally "a fact bound inquiry best left to the district courts" to assess at summary judgment, the allegations in Maxson's complaint prevent him from plausibly alleging coverage here. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 310 (3d Cir. 2007).

Maxson contends in the alternative that the collective bargaining agreement created an exception to the ADA's illegal drug use exclusion because it provides that an employee whose "job performance or attendance is unsatisfactory" because of "personal problems"—including but not limited to "drug abuse"—"shall" be placed on an employee assistance program. The Supreme Court has explained, however, that claims under the ADA are "distinct" from claims under collective bargaining agreements. *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79 (1998). Such agreements create contractual rights; the ADA creates statutory rights. *See id.* at 76. The scope of these rights, the interpretation of the sources that create them, and the forums best suited to adjudicating disputes under them may all vary. *See id.* at 76-79. Whatever remedies Maxson may have been entitled to pursue under the collective bargaining agreement, the agreement does not alter the fact that he is excluded from coverage under the ADA.

We conclude that Maxson's complaint fails to plausibly allege that he is "a qualified individual with a disability" within the coverage of the ADA and that the district court therefore properly dismissed his claims. *See* 42 U.S.C. § 12114.

## IV. CONCLUSION

For these reasons, we **AFFIRM**.