INTERSTATE BRANDS
CORPORATION, Plaintiff–Appellant,

v.

BAKERY DRIVERS & BAKERY GOODS
VENDING MACHINES, LOCAL UN-
ION NO. 550, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
Defendant–Appellee.

Docket No. 98–7194

United States Court of Appeals,
Second Circuit.

Argued Oct. 29, 1998.

Decided Jan. 29, 1999.

William P. Harrington, White Plains, N.Y. (Bleakley Platt & Schmidt, of Counsel), for Plaintiff–Appellant.

Eric R. Greene, New York, N.Y. (Spivak Lipton Watàna be Spivak & Moss LLP, of Counsel), for Defendant-Appellee.

Before: FEINBERG, VAN GRAAFEILAND, and LEVAL, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Interstate Brands Corporation (IBC) appeals from the grant of summary judgment in the United States District Court for the Eastern District of New York, Sterling Johnson, Jr., J., in favor of defendant Bakery Drivers & Bakery Goods Vending Machines Local Union 550, International Brotherhood of Teamsters (the Union) on IBC's action, filed pursuant to Section 303 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 187, to recover damages from the Union's strike, an alleged illegal secondary boycott in violation of Section 8(b)(4)(i)-(ii)(B) and 8(b)(4)(i)-(ii)(D) of the National Labor Relations Act (NLRA), 29

U.S.C. §§ 158(b)(4)(i)-(ii)(B) and 158(b)(4)(i)-(ii)(d). In a thorough opinion, the district court dismissed the suit on the ground that the parties' collective bargaining agreement (the Agreement) requires that the dispute be heard by an arbitrator. See *Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines Local 550*, 1998 WL 19974 (E.D.N.Y. Jan.20, 1998). For the reasons stated below, we affirm.

## I. Background

According to the record before us, IBC is a Delaware corporation engaged in the production, marketing and distribution of cake and bakery products in various regions of the United States. For many years, IBC has distributed Dolly Madison cake products in the New York metropolitan area through three non-union firms independently owned and operated by Sam Jacobson (the Jacobson companies). In July 1995, IBC acquired the Continental Baking Company (CBC), which sold and distributed Hostess Cake and Wonder Bread products in the New York metropolitan area. As a result, IBC became the employer of CBC's Route Salespersons and assumed the terms and conditions of the Agreement entered into by the Union, which represents Route Salespersons, and CBC for the period from March 1994 to March 1997.

Article VI of the Agreement contains an unusually broad arbitration clause that requires the parties to arbitrate

> all complaints, disputes or grievances arising between them involving questions of interpretation or application of any clause or matter covered by this Agreement, or any act or conduct or relation between the parties hereto, directly or indirectly.

Article XXII of the Agreement, reproduced in full in the Appendix, excludes from arbitration certain disputes over the employer's distribution policies. Article XXII(A) provides that in view of

> changes that have occurred in retail food stores, i.e., the rapid disappearance of small individual stores and their replacement at an accelerated rate by the large corporate and cooperative food chains ... it may be necessary to recognize the ap-

propriateness of considering changes in delivery, merchandising and compensation methods.

Under Article XXII(A), the employer (now IBC) may request a meeting with the Union during the term of the Agreement "for the purpose of negotiating and mutually agreeing on different commission payments or other methods of compensation or delivery methods which may be desirable under such changed conditions." Further, "in the event of such request, the parties will meet promptly for the purposes outlined above." Article XXII(B) provides that "[i]n the event the parties are unable to agree, the dispute shall not be subject to arbitration." Finally, Article XXII(C) provides that

> Other provisions of the contract notwithstanding, the parties recognize that the employer may decide to change its distribution methods during the term of this agreement only. Accordingly, it is understood that the employer has the right to reopen the contract during the contract term for the sole purpose of negotiating the effects of such changed distribution. In such reopener, the parties will meet and bargain in good faith to resolve differences, if any. If the parties fail to reach agreement and the employer implements such distribution changes the Union shall have the right to strike and the employer shall have the right to lock out over the distribution change issues.

The Agreement's validity is undisputed.

Shortly after IBC's acquisition of CBC, Richard Volpe (Volpe), the Union's Executive Officer, claimed that IBC's long-standing practice of distributing Dolly Madison cake products through the Jacobson companies was a "change" in distribution policy that triggered Article XXII of the Agreement. The Union's position was that, because of IBC's acquisition of CBC and assumption of CBC's obligations under the Agreement, Union members were entitled to distribute Dolly Madison products in addition to Hostess Cake and Wonder Bread. Despite the Union's claim, IBC continued to distribute Dolly Madison products through the Jacobson companies. Volpe, in turn, sent letters to IBC in August 1995 and February 1996 threatening a strike under Article XXII(C).

On September 9, 1996, the Union struck IBC's Hostess Cake operation. IBC responded by filing an unfair labor practice charge with the National Labor Relations Board ("NLRB"), alleging an illegal secondary boycott in violation of Section 8(b)(4) of the NLRA. The Union reached a settlement with the NLRB on September 11, 1996 pursuant to which it agreed to end the strike. Rather than returning to work the next day, however, the Union expanded the strike to include IBC's Wonder Bread operation. The strike ended on September 13, 1996. According to IBC's complaint in the district court, the Union called the strike in order to pressure IBC to stop distributing Dolly Madison products through the Jacobson companies and, instead, assign that business to Union members.

IBC filed this suit under Section 303 of the LMRA for damages caused by the Union's allegedly unlawful secondary activity. IBC now appeals from the district court's decision that the Agreement requires arbitration of this claim.

## II. Discussion

■ We review the district court's ruling on arbitrability de novo. See *Collins & Aikman Products Co. v. Building System*, 58 F.3d 16, 19 (2d Cir.1995). This appeal presents three principal issues: (1) whether Article VI of the Agreement covers IBC's claim for damages under LMRA § 303; (2) whether that claim comes within the scope of the exception to arbitration contained in Article XXII; and (3) whether this court's decision in *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local 584*, 359 F.2d 598 (2d Cir.), *cert. denied*, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966), precludes the arbitration of IBC's claim. In addition, IBC argues that summary judgment was improper because there were genuine issues of material fact that still had to be decided in the district court.

### A. The Scope of the Article VI Arbitration Clause

■ The Supreme Court made clear almost 40 years ago in the *Steelworkers Trilo-*

*gy* that there is a strong federal policy favoring the arbitrability of labor disputes. See *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960). Normally, the inclusion of an arbitration clause in a collective bargaining agreement creates a "presumption of arbitrability" as to disputes that arise between the parties to that agreement. See *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). This presumption "is particularly applicable," *id.*, when the arbitration clause is broad, as it is here.

■ However, IBC contends the Supreme Court's recent decision in *Wright v. Universal Maritime Svc. Corp.*, —— U.S. ——, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), decided after this appeal was argued, makes the presumption of arbitrability inapplicable. In *Wright*, the Court held that a longshoreman was not barred from suing his employer under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., despite a general arbitration clause in the collective bargaining agreement (CBA) negotiated between his employer and his union. The Court held that the presumption of arbitrability in this context "does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than courts to interpret the terms of a CBA." *Id.* at ——, 119 S.Ct. at 395. Where a dispute "ultimately concerns not the application or interpretation of any CBA, but the meaning of a federal statute", *id.* at ——, 119 S.Ct. at 396, the presumption does not apply. Instead, *Wright* requires a court to determine whether, without use of the presumption, an "ordinary textual analysis of a CBA show[s] that matters which go beyond the interpretation and application of contract terms are subject to arbitration." *Id.*

The *Wright* Court also stated that where the matter beyond the interpretation and application of contract terms is the union-negotiated waiver of an employee's statutory right to a judicial forum, the waiver will be given effect only if it is "clear and unmistakable." *Id.* at —— –——, 119 S.Ct. at 395–96. The Court went on to state, however, that where the matter involves an individual employee's waiver of *his or her own* rights through an individually, as opposed to collectively, bargained employment contract, this "clear and unmistakable" standard is not applicable. See *id.*; see also, e.g., *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (holding that arbitration clause covering "any dispute, claim or controversy" required arbitration of claim brought under Age Discrimination in Employment Act by individual employee in securities industry). *Wright* does not provide express guidance on whether the "clear and unmistakable" standard applies where the statutory right at issue belongs to the employer, as it does here. However, the underlying rationale of the decision leads us to conclude that on this record it does not.

■ *Wright*'s "clear and unmistakable" standard is based upon a concern about allowing a union to waive an individual employee's statutory rights—i.e., a concern about the waiver of one's rights by someone else. Where, however, one waives one's own rights, the "clear and unmistakable" standard is not required. We thus see no reason why an employer that, like IBC, has individually negotiated a CBA with a union[1] should be held to have waived its statutory rights only if the waiver was "clear and unmistakable." Such an employer has negotiated on behalf of itself.

■ Thus, it seems appropriate for us to infer from Article VI of the Agreement that IBC has waived its right to a judicial forum for the vindication of its federal statutory claim. Article VI requires a party to arbitrate "any act or conduct or relation between

1. On the record before us, it appears that the Agreement here was negotiated individually by CBC with the Union. IBC assumed the obligations of the Agreement and clearly has no greater right under it than CBC.

the parties hereto, directly or indirectly." As noted earlier, this language is unusually broad. The district court recognized that the arbitration provision is quite similar to one our court deemed "very broad" in *Associated Brick Mason Contractors v. Harrington*, 820 F.2d 31, 35 (2d Cir.1987). Indeed, the two clauses are almost identical. See *id.* at 36. Such language "could hardly be broader," *id.*, and is reasonably read to reach matters that go beyond the application and interpretation of the Agreement. Furthermore, this result is compelled as a matter of contract construction, without the use of any presumption. IBC agreed to arbitrate any dispute "involving questions of interpretation or application of any clause or matter covered by [the] Agreement, *or* any act or conduct or relation between the parties [t]hereto, directly or indirectly." (emphasis supplied). "[A]ny act or conduct or relation between the parties" must necessarily mean something other than "questions of interpretation or application of any clause or matter covered by [the] Agreement," for to hold otherwise would render this language mere surplusage. See *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985), where we stated that an interpretation "that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect."

Thus, we hold that IBC's LMRA § 303 claim comes within the scope of the arbitration clause in Article VI.

### B. The Article XXII Arbitration Exclusion Provision

■ We next turn to whether IBC's claim comes within Article XXII's exclusion from arbitration of certain distribution disputes. IBC contends that because the Union's 1996 strike was called to protest IBC's non-Union distribution of Dolly Madison products, a suit for damages caused by that strike is a "dispute" over distribution policy that "shall not be subject to arbitration." The Union argues, and the district court agreed, that the word "dispute" in this context has a far narrower scope. According to the Union, the only "dispute" excluded from arbitration is a dispute over what IBC's methods of distribution shall be—that is, the parties may not resolve their differences over distribution methods by resorting to "interest arbitration," in which an arbitrator would decide whether IBC may implement its proposed change(s).[2] Instead, the Union argues, Article XXII(C) allows the parties to use a strike or lockout—one of only three exceptions to the Agreement's no-strike/no-lockout clause—to "negotiate" changes in this fundamental work issue.[3]

IBC's claim that a suit for damages caused by an illegal strike over distribution issues is a "dispute" under Article XXII(B) is not the logical meaning of that provision. As the district court observed:

> Here, Plaintiff's claim is not the type of dispute contemplated in Article XXII(B). First and foremost, Plaintiff's claim is not directly related to a change in distribution policies. Plaintiff did not bring this action based on a dispute regarding a change in "commission payments or other methods of compensation or delivery methods" which it wished to implement. Instead, Plaintiff filed this action seeking damages resulting from Local 550's strike. Second, Plaintiff does not make a claim under Article XXII. Plaintiff's claim is a Section 303 claim for damages.

*Interstate Brands*, 1998 WL 19974 at *5. In other words, IBC's argument confuses its dispute over the damages caused by the Union's allegedly illegal strike with the underlying dispute that caused the strike. These disputes are distinct, not one and the same.

For these reasons, IBC's LMRA § 303 claim is not excluded from arbitration under Article XXII of the Agreement.

---

**2.** See 5 Labor Law § 21.08 (Theodore Kheel ed., 1998) (" 'Interest arbitration' is the arbitration of new contract terms, usually resorted to when the parties are unable to agree on the terms of a new, renewed, or reopened contract").

**3.** The other two exceptions to the no-strike/no-lockout clause are (1) when one of the parties to the Agreement fails to abide by the decision of an arbitrator; and (2) when IBC fails to make required contributions to the Union's Health Benefits Fund or Pension Fund.

C. The Effect of Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local 584.

IBC also argues that its LMRA § 303 claim is not arbitrable under this court's decision over three decades ago in Old Dutch, 359 F.2d 598. The "principal issue", id. at 600, in Old Dutch was whether an employer's LMRA § 303 claim against a union was arbitrable pursuant to an arbitration clause that read as follows:

[A]ny and all disputes and controversies arising under or in connection with the terms and provisions of this agreement, or in connection with or relating to the application or interpretation of any of the terms or provisions hereof, or in respect to anything not herein, expressly provided but *germane to the subject matter of this agreement* * * * shall be submitted for arbitration to anarbitrat or * * * (emphasis supplied)

Id. The court in Old Dutch held that (1) the arbitration clause did not commit to arbitration disputes unrelated to the application and interpretation of particular provisions of the collective bargaining agreement; and (2) LMRA § 303 claims were not germane to the subject matter of the agreement. See id. at 601. Accordingly, the court concluded that "[s]ince nothing in the record or collective agreement ... provide[d] a basis for finding that the employer and the union agreed to submit the employer's damage claim to an arbitrator," id. at 604, the employer's LMRA § 303 claim was not arbitrable. Old Dutch, however, is distinguishable from the present case because, as previously explained, Article VI of the Agreement is not as limited as its counterpart in Old Dutch. Article VI commits to arbitration "any act or conduct or relation between the parties hereto, directly or indirectly," even if not germane to the subject matter of the Agreement. IBC's reliance on Old Dutch is thus misplaced.

IBC also relies on Old Dutch's assertion that "absent a clear, explicit statement in the collective bargaining contract directing an arbitrator to hear and determine the validity of tort damage claims by one party against another, it must be assumed that the employer did not intend to forego his rights under Section 303." Id. at 603. For two reasons, we decline to follow this language. First, since Old Dutch was decided the Supreme Court has repeatedly held that a party to a contract who has a federal statutory claim may be limited to an arbitral forum even though the agreement requiring arbitration of that claim did not contain "a clear, explicit statement" to that effect. See, e.g, Gilmer, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26; Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Second, following the language of Old Dutch would, in effect, conflict with a key aspect of the holding in Wright. As already noted, the Court there stressed that plaintiff Wright had not individually waived his right to a judicial forum for his statutory claim; his union had negotiated that. In this case, however, IBC itself negotiated away its right. Under the circumstances, we think it inappropriate to extend to an individual employer like IBC Wright's requirement that waiver of a judicial forum for statutory claims must be "clear and unmistakable."

Accordingly, we conclude that IBC's LMRA § 303 claim may be arbitrated despite the absence of a clear, explicit statement to that effect.

D. Genuine Issues of Material Fact

Finally, IBC contends that summary judgment was improper in light of assertions made by Volpe to members of the Union and IBC that the Union's objection to IBC's use of the Jacobson companies was not subject to arbitration under the Agreement. According to IBC, these statements create a genuine issue of material fact as to the arbitrability of its LMRA § 303 claim. We disagree. Like the contention that IBC's statutory claim comes within Article XXII's exclusion of certain distribution disputes from arbitration, this argument confuses IBC's dispute over the damages that resulted from the allegedly illegal strike with the underlying dispute that caused the strike. Whether or not Volpe considered the Union's distribution dispute to be arbitrable is irrelevant to the arbitrability

of IBC's LMRA § 303 claim based on damages caused by the Union's allegedly unlawful secondary activity.

### Conclusion

We conclude that the parties' collective bargaining agreement requires that IBC's LMRA § 303 claim be arbitrated, and we affirm the judgment of the district court.

### ATTACHMENT

### Appendix

### ARTICLE XXII—REVIEW OF DISTRIBUTION POLICIES:

(A) The Union and Employer recognize the changes that have occurred in retail food stores, i.e. the rapid disappearance of small individual stores and their replacement at an accelerated rate by the large corporate and cooperative food chains. Accordingly, it may be necessary to recognize the appropriateness of considering changes in delivery, merchandising and compensation methods. In view of this, the Employer covered by this Agreement may at any time during the life of the Agreement request a meeting with the Union for the purpose of negotiating and mutually agreeing on different commission payments or other methods of compensation or delivery methods which may be desirable under such changed conditions.

In the event of such request, the parties will meet promptly for the purposes outlined above.

(B) In the event the parties are unable to agree, the dispute shall not be subject to arbitration.

(C) Other provisions of the contract notwithstanding, the parties recognize that the employer may decide to change its distribution methods during the term of this agreement only. Accordingly, it is understood that the employer has the right to reopen the contract during the contract term for the sole purpose of negotiating the effects of such changed distribution. In such reopener, the parties will meet and bargain in good faith to resolve differences, if any. If the parties fail to reach agreement and the employer implements such distribution changes the Union

shall have the right to strike and the employer shall have the right to lock out over the distribution change issues.