786 A.2d 186

Natalie DAVIS, Clyde Taylor, Benjamin Robinson, Richard Davison, Mary Hoosack, Charles Colder, Farlea Howie, Elroy Savage, Helen Myers, Monica Androski, and Kenneth Miller

v.

CHESTER UPLAND SCHOOL DISTRICT, Jeffrey Leggette, Kirkwood Cottman, Andrea Golson, Fred Moon, Donald Masse, Charles Davis, and Joscelyn Keeve Bagley.

Appeal of: Chester Upland School District et al.

Supreme Court of Pennsylvania.

Argued April 30, 2001.

Decided Dec. 19, 2001.

158

Leo A. Hackett, Media, for Chester Unpland School District, et al.

Deborah A. Krull, Media, Leonard V. Tenaglia, Darby, Joseph W. Chupein, Media, for Natalie Davis, Clyde Taylor, et al.

Michelle F. Duggan, for amicus curiae.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal by allowance from an order of Commonwealth Court which affirmed in part and reversed in part a declaratory judgment issued by the Court of Common Pleas of Delaware County in a case where furloughed professional employees of a school district claimed that they should have been recalled to fill certain newly created positions of employment.

Appellees Natalie Davis, et al., were tenured, professional employees of the Chester Upland School District (Chester Upland), appellant. During the late 1980s and early 1990s, a decrease in student enrollment caused Chester Upland to suspend appellees from their positions of employment. See 24 P.S. § 11–1124(1) (Public School Code provision authorizing suspension of professional employees in the event of a substantial decrease in enrollment). Subsequently, Chester Upland experienced an increase in student discipline problems. To remedy this, new positions for professional employees were created at the end of 1992. Without offering the newly created positions to appellees, Chester Upland hired new employees, namely, Jeffrey Leggette, et al., appellants.

Appellees filed an action in the court of common pleas seeking a declaratory judgment that they, rather than appellants, should have been hired for the positions. They alleged that they were qualified to fill the positions, that they had seniority over appellants, and that they were entitled to fill

those positions pursuant to section 1125.1(d)(2) of the Public School Code. That section, in relevant part, provides:

Suspended professional employes or professional employes demoted for the reasons set forth in section 1124 shall be reinstated on the basis of their seniority within the school entity. No new appointment shall be made while there is such a suspended or demoted professional employe available who is properly certificated to fill such vacancy.

24 P.S. § 11–1125.1(d)(2).

Appellants responded that an action seeking a declaratory judgment could not be sustained. They asserted that, rather than filing an action in court, appellees were required to proceed to arbitration pursuant to the grievance procedure of the collective bargaining agreement between Chester Upland and the teachers' association. On the basis that the agreement did not specifically address the rehiring of furloughed employees, however, the trial court rejected the argument that the matter should have been submitted to arbitration. Reasoning that appellees were qualified to fill the positions and that they had more seniority than appellants, it held that Chester Upland violated section 1125.1(d)(2), supra, by not rehiring appellees.

Commonwealth Court reversed the trial court's order in part, on the basis that one of the newly created positions did not require certification and, thus, that Chester Upland had no duty to recall furloughed employees to fill that position. With regard to all of the other positions, however, it affirmed the trial court's order requiring that appellees be rehired.

■ The sole issue in this appeal is whether the trial court erred in allowing appellees, who are subject to a collective bargaining agreement that contains a grievance procedure, to pursue a declaratory judgment action regarding their work-related complaint.

■ It has long been recognized that there is a strong public policy in favor of the arbitration of labor disputes. *Class of Two Hundred Administrative Faculty Members of State Colleges in Commonwealth v. Scanlon,* 502 Pa. 275, 280,

466 A.2d 103, 105 (1983). Implementing that policy, the Public Employe Relations Act (PERA), 43 P.S. § 1101.903, provides that "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is *mandatory*." (Emphasis added). Hence, appellees were *required* to take this dispute to arbitration, unless the dispute was outside the terms of the collective bargaining agreement.

The agreement between Chester Upland and its teachers' association sets forth a procedure by which all grievances are to be resolved. The purpose of this provision, the agreement states, is "to secure, at the lowest possible level, equitable solutions to the problems which may from time to time arise affecting teachers." Article III(B). The procedure involves a number of measures designed to resolve the dispute, and, where those measures fail, the dispute goes to arbitration. The initial levels of grievance resolution can be pursued by teachers with or without the assistance of the teachers' association. Article III(D)(1). Where those measures fail, the association can be asked to submit the matter to arbitration. Article III(C)(6)(a).

The present agreement sets forth a definition of grievance that Chester Upland asserts to be broad enough to encompass the present dispute, i.e., to bring the matter within the terms of the agreement. Specifically, Article III(A)(1) provides:

A "grievance" is a complaint between a teacher and/or the Association and the School District in accordance with the procedures and Grievance Report forms incorporated herein as within this Article.

Whether the dispute between appellees and Chester Upland is in fact a grievance that can be arbitrated under the collective bargaining agreement must, at least initially, be left to an arbitrator to decide. As we stated in *Pennsylvania Labor Relations Bd. v. Bald Eagle School District*, 499 Pa. 62, 65, 451 A.2d 671, 672 (1982), "[w]e have consistently held that '[t]he question of the *scope* of the grievance arbitration procedure is for the arbitrator, at least in the first instance.'

*Pittsburgh Joint Collective Bargaining Committee v. Pittsburgh,* 481 Pa. 66, 75, 391 A.2d 1318, 1323 (1978)". Thus, pursuant to the PERA, 43 P.S. § 1101.903, supra, all questions of whether a matter is arbitrable must be decided in the first instance by an arbitrator, not a trial court. *Id.; Chester Upland School District v. McLaughlin,* 544 Pa. 199, 675 A.2d 1211 (1996) (affirming on the opinion of Commonwealth Court, 655 A.2d 621 (Pa.Cmwlth.1995)).

The trial court was, therefore, without jurisdiction to proceed in this matter, inasmuch as there had been no decision by an arbitrator as to the arbitrability of the dispute. Accordingly, Commonwealth Court erred in upholding the trial court's issuance of a declaratory judgment.

Order reversed.*

SAYLOR, J., files a dissenting opinion in which NIGRO and NEWMAN, JJ., join.

SAYLOR, Justice, (dissenting).

The summary of argument presented in Appellees' brief proceeds as follows:

> Whether a party subject to a collective bargaining agreement is required to utilize the grievance procedure of the collective bargaining agreement to litigate a work related issue depends upon whether the party is seeking to vindicate contractual or statutory rights.

> The mandatory arbitration provisions of Section 903 of the Public Employes Relations Act, ("PERA") apply only to "disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement." The claim in this case does not arise out of the interpretation of the collective bargaining agreement. This declaratory judgment action was brought solely to enforce a statutory right granted to the Appellees by Section 1125.1 of the Public School Code. Furthermore, any provision in a collective bargaining agreement that attempted to deprive an individ-

---

* Appellees' motion to quash appeal and vacate the order of Commonwealth Court is denied.

ual of their statutory rights would violate Section 703 of PERA and would be unenforceable.

Finally, the fact that Section 703 of PERA prohibits a collective bargaining agreement that would violate or would be inconsistent with the teachers['] statutory rights[,] and that the teachers retained all of their statutory rights[,] was expressly acknowledged by the District and the union in Article III of the collective bargaining agreement which provides as follows:

"Article III

Nothing contained herein shall be construed to deny or restrict to any teacher such rights as he/she may have under the Pennsylvania School Laws or other applicable laws and regulations. The rights granted to teachers hereunder shall be deemed to be in addition to those provided elsewhere."

(citations omitted). The majority reverses the Commonwealth Court's order (thereby overturning the judgment of the common pleas court) without squarely addressing this argument and, in particular, the significance of the involvement of employee statutory entitlements. I find this to be of particular concern where other jurisdictions have drawn a clear distinction between arbitrability of disputes regarding contractual and statutory entitlements. *See, e.g., Fowler v. Town of Seabrook,* 145 N.H. 536, 765 A.2d 146, 148 (2000)("Where the plaintiff seeks to vindicate a statutory right, the presumption of arbitrability does not pertain," but rather, such presumption is limited to matters entailing the interpretation and application of the collective bargaining agreement). For example, recently the United States Supreme Court required that any union-negotiated waiver of employees' right to be heard in a judicial forum with respect to statutory claims must, at a minimum, be clear and unmistakable. *See Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70, 79–80, 119 S.Ct. 391, 396, 142 L.Ed.2d 361 (1998).[1] Indeed, the Fourth

1. By so holding, the Supreme Court averted the need to resolve the broader question of whether a union can waive an employee's entitle-

Circuit's holding in *Wright* which was overturned, to the effect "that the general arbitration provision in the CBA governing [the plaintiff's] employment was sufficiently broad to encompass [his] statutory claim . . ., and that [the arbitration] provision was enforceable," *Wright,* 525 U.S. at 75, 119 S.Ct. at 394 is virtually identical to the majority's holding in the present case. *Accord Fowler,* 765 A.2d at 148 ("A general arbitration clause does not meet the 'clear and unmistakable' standard." (citing *Wright,* 525 U.S. at 80, 119 S.Ct. at 396)).

Chester Upland places substantial reliance on *PLRB v. Bald Eagle Area Sch. Dist.,* 499 Pa. 62, 451 A.2d 671 (1982). While certainly there is broad language in that decision favoring Chester Upland's position, the statutory provision at issue in *Bald Eagle* was a proscription against employer payments to public employees while on strike, *see id.* at 64, 451 A.2d at 672, not one establishing individual employee entitlements such as is at issue here. Therefore, I believe that the question presented in this appeal represents one of first impression, and accordingly, the Court should consider the substantial counter-arguments. Moreover, other courts have easily distinguished situations involving statutory employer versus employee entitlements, concluding that *Wright's* rule does not apply where the statutory right at issue belongs to the employer. *See, e.g., Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Local Union No. 550, Int'l Brotherhood of Teamsters,* 167 F.3d 764, 767–68 (2d Cir.1999).

In summary, in light of the relevant arguments, authorities, and policy considerations, I would not reverse the Commonwealth Court's order and overturn the common pleas court's judgment on the strength of the general policy favoring arbitration alone. Rather, I would undertake to address *Wright's* reasoning to determine whether it should be applied in the development of Pennsylvania jurisprudence. Further, it would be advisable, before reversing, to also consider on its terms the broader issue not resolved in *Wright. See supra*

ment to judicial resolution of statutory claims in a collective bargaining agreement prior to the occurrence of a dispute.

note 1. Alternatively, I would dismiss this appeal as improvidently granted, since Employer's four-page argument fails to address the salient reasoning as developed in *Wright* or otherwise capture the essential inquiries.

NIGRO and NEWMAN, JJ., join this dissenting opinion.