NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3140
_____

RONALD HENEGHAN,
                              Appellant

v.

NORTHAMPTON COMMUNITY COLLEGE;
DR. ELIZABETH BUGAIGHIS

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 5-09-cv-04979
(Honorable Lawrence F. Stengel)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 4, 2012

Before:  SCIRICA, GREENAWAY, JR. and NYGAARD, *Circuit Judges*.

(Filed: August 15, 2012)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Ronald Heneghan appeals the grant of summary judgment on his § 1983 claim that

Northampton Community College deprived him of his protected property interest in

public employment without due process of law. Because Pennsylvania law afforded Heneghan ample procedural protections, we will affirm.

## I.

Heneghan joined the faculty of Northampton Community College in the fall of 2003 in a tenure-track position as an Associate Professor of Communications and Theatre. Heneghan was hired on an initial contract covered by the collective bargaining agreement ("CBA") between the College and the American Federation of Teachers, a public employee union. Under the CBA, "Faculty on initial contracts are typically offered six one-year contracts. . . . Non-renewals during the first five years may not be appealed, but a Faculty Member may appeal a non-renewal occurring during the sixth year of employment to the Board [of Trustees]. . . . The Board's decision in the appeal shall be final." Art. VI, ¶ C. While the College may decline to renew an initial contract "for any reason," Art. VI, ¶ C, it may discharge faculty "only for just cause." Art. X, ¶ A. Another section of the CBA sets out a three-step grievance process for disputes "arising out of the interpretation, application, or violation of [its terms]." Art. XIV, ¶ A.

In February 2009, during his sixth year on the initial contract, Heneghan was recommended to the Board of Trustees for tenure, and on March 5, 2009, the Board voted to approve his tenure appointment. In a memorandum, Kathy Siegfried, the College's Director of Human Resources, informed Heneghan of the vote, writing that his appointment was "effective with the 2009/10 academic year." App. at 251. Shortly after the March 5 tenure vote, however, allegations surfaced about Heneghan's personality conflicts with other faculty and inappropriate interactions with students. According to

2

these allegations, Heneghan brought beer to student parties where underage students were present, kissed a female student during a rehearsal, and humiliated another female student in class by commenting on her weight. As a result, on March 13, 2009, Heneghan received a letter from the College President rescinding the earlier letter and notifying Heneghan that the decision on his appointment would be delayed.

On April 2, 2009, the Board of Trustees ratified the rescission of Heneghan's tenure appointment. Heneghan appealed this decision in a letter to Helene Whitaker, the Vice-President of Administrative Affairs, citing his right to appeal under Article VI, ¶ C, of the CBA. The Board of Trustees heard Heneghan's appeal on May 7, 2009, and affirmed its decision not to grant tenure.

Heneghan, assisted by a union representative, filed a grievance on May 13, 2009, challenging the College's tenure decision under the three-step grievance process set out in Article XIV of the CBA. The College official who heard his grievance denied his claim on the ground that the Article VI appeal was the exclusive procedure available to Heneghan, and union officials decided not to pursue the matter further. In an email exchange with the College President, Heneghan attempted to elevate his grievance to the second step of the grievance process, but the College President ultimately denied his second-step grievance.

Heneghan filed this § 1983 suit on October 29, 2009, contending that the College's actions violated the due process clause of the Fourteenth Amendment. The

3

District Court granted summary judgment for the College and denied Heneghan's motion for reconsideration. Heneghan appeals.[1]

II.

The Fourteenth Amendment prohibits the states from depriving a person of life, liberty, or property without due process of law. *See* U.S. Const. amend. XIV, § 1. Public employment is a protected property interest when state law confers such interest by statute or contract. *See Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1398 (3d Cir. 1991). In such circumstances, a public employee is entitled to "a pretermination opportunity to respond, coupled with post-termination administrative [or judicial] procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547-48 (1985). At a minimum, the pretermination procedures must give the employee "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. Generally, due process does not require an impartial decisionmaker at the pretermination hearing provided the state affords "a neutral tribunal at the post-termination stage." *McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995).

The District Court determined that Heneghan's fleeting tenure appointment created a question of fact as to whether he had a protected property interest in his

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the grant of summary judgment, applying the same standard as the District Court. *Doe v. Luzerne Cnty.*, 660 F.3d 169, 174 (3d Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

4

employment. Because we conclude that the procedures available to Heneghan satisfied due process, we assume without deciding that Heneghan had such an interest.

Heneghan claims his termination violates due process because he never had the opportunity for a hearing before a neutral decisionmaker. The District Court determined, however, that Heneghan could have obtained an impartial post-termination hearing either through a state court action to compel arbitration of his grievance under the three-step grievance process set out in Article XIV of the CBA or by seeking judicial review of the agency action under a provision of Pennsylvania's Local Agency Law, 2 Pa. Cons. Stat. Ann. § 754.[2]

The CBA's grievance procedure provides for arbitration of disputes arising out of the "interpretation, application, or violation" of its terms. Article XIV, ¶ A. Heneghan does not dispute that arbitration of the merits of his termination would satisfy the due process requirement of an impartial hearing. Rather, he argues that the arbitration procedure in Article XIV of the CBA was not available to him.

Heneghan contends he was prevented from pursuing arbitration because college and union officials believed his termination could only be challenged through an appeal to the Board of Trustees under Article VI of the CBA and thus could not be grieved under Article XIV's three-step procedure. We disagree. The language of the collective bargaining agreement governs and that language entrusts disputes arising out of the "interpretation, application, or violation" of its terms to the three-step grievance

---

[2] Because we conclude that the availability of an action to compel arbitration satisfies due process, we need not reach the District Court's alternative holding that Pennsylvania's Local Agency Law affords an adequate procedural remedy.

procedure. Whether Heneghan's termination is arbitrable is itself a matter arising out of the interpretation of the CBA and thus falls under the grievance procedure. *See Davis v. Chester Upland Sch. Dist.*, 786 A.2d 186, 188-89 (Pa. 2001) ("Whether the dispute . . . is in fact a grievance that can be arbitrated under the collective bargaining agreement must, at least initially, be left to an arbitrator to decide."). That the unique factual circumstances of Heneghan's fleeting tenure appointment and subsequent termination are not specifically addressed in the CBA does not rule out arbitration.

Nor does the failure of his union to seek arbitration render the process unavailable or inadequate. "If a public employee believes that the grievance process was defective, he may seek relief available under state law." *Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1571 (3d Cir. 1995). The Pennsylvania Public Employee Relations Act, 43 Pa. Stat. Ann. § 1101.101 *et seq*., authorizes the Court of Common Pleas sitting in equity to order completion of the CBA's arbitration procedure. *Dykes*, 68 F.3d at 1571 (citing *Martino v. Transp. Workers' Union of Phila. Local 234*, 480 A.2d 242, 252 (Pa. 1984)). As we held in *Dykes*, the availability of this safeguard under Pennsylvania law satisfies due process even if the original hearing conducted by the employer was biased and the union refused to take the employee's claim to arbitration. *Id*. In fact, Heneghan informs us that he has filed a state court action under the Public Employee Relations Act seeking to compel arbitration of his employment grievance. Put simply, Pennsylvania offers a path to a neutral post-termination hearing, and even as Heneghan treads this path, he claims that it is barred to him.

III.

6

Because sufficient procedural protections were available to Heneghan, we will affirm the District Court's grant of summary judgment.