# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

AFSCME District Council 47, : 
Local 2187, : 
: 
                          Appellant : 
: 
            v. : No. 1242 C.D. 2020
: Argued: November 18, 2021
The City of Philadelphia and : 
AFSCME District Council 33 : 

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED:  April 13, 2022

AFSCME District Council 47, Local 2187 (District Council 47) appeals from an order of the Philadelphia County Common Pleas Court (trial court), which denied District Council 47's motion to vacate an arbitration award (arbitration award) because District Council 47 failed to prove that the arbitration award did not draw its essence from the language of the collective bargaining agreement (CBA) between District Council 47 and the City of Philadelphia (City). At issue is District Council 47's dispute with the City and with AFSCME District Council 33 (District Council 33)[1] over the labor union classification of graphic design specialists employed by the City and represented by District Council 33. District Council 47

---

[1] The arbitrator granted permission for District Council 33 to participate as an intervenor.

presents two questions for review, whether the trial court erred when it denied District Council 47's motion to vacate the arbitration award where the arbitration award fails the essence test because it relied on facts not in the record, and whether the arbitrator exceeded his authority by altering the language of the CBA. After careful review, we affirm.

The facts as found by the arbitrator are as follows. For approximately 65 years, District Council 33 has been the exclusive collective bargaining representative for a unit of blue-collar City employees, including "a handful" of graphic design specialists. Reproduced Record (R.R.) at 222a.[2] Although representation of the City's blue-collar employees, including graphic design specialists, by District Council 33 was initially by voluntary recognition, "this relationship was eventually formalized by an Ordinance passed by Philadelphia City Council in 1961."[3] *Id.* The relationship was further codified in 1970 by the enactment of the Public Employe Relations Act (PERA)[4], also known as Act 195. The PERA addressed preexisting collective bargaining relationships, and "specifically 'grandfathered' the contractual relationship" between the City and District Council 33. *Id.* Specifically, Section 2003 of the PERA, 43 P.S. §1101.2003, "makes permanent any collective bargaining relationship which has

---

[2] Pa. R.A.P. 2173 states: "Except as provided in Rule 2174 (tables of contents and citations), the pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc." Although the pagination of District Council 47's Reproduced Record does not conform to the foregoing Rule, we will cite to the relevant pages as required by the Rule.

[3] Philadelphia, Pa. Ordinance (1961) (Ordinance) titled "An Ordinance to authorize the Mayor to enter into an agreement with [District Council 33] regarding its representation of certain City Employes." R.R. at 339a-46a.

[4] Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301.

2

been ratified by a local municipal ordinance and appears to make such relationships immune to challenge by any rival labor organizations."[5] *Id.* at 222a-23a.

In June 2016, the City Civil Service Commission approved a change in the job description of graphic design specialists to add a college degree with major course work in graphic design or visual communication design as a qualifier for the position. R.R. at 352a. The job description previously required only a four-year diploma program at an accredited art school with major course work in graphic design. *Id.* With the additional job requirement of a college degree, District Council 47 sought to apply its CBA to the graphic design specialist position by filing a grievance which stated as follows:

> On 6/5/16 the [City] Civil Service Commission approved changes to the job specification [of the graphic design specialist] which include[s] revising and expanding the training and experience requirements to include a degree program at a college or university which work is the exclusive jurisdiction of [District Council 47] as referenced in PERA-R-1063-E.

*Id.* at 355a-56a.

District Council 47's remedy sought was to "make [the] Union whole." R.R. at 355a-56a. The grievance was denied by the City, and when the issues could

---

[5] Section 2003 of the PERA provides:

> Present provisions of an ordinance of the City of Philadelphia approved April 4, 1961, entitled "An Ordinance to authorize the Mayor to enter into an agreement with District Council 33, [AFSCME], A.F.L.-C.I.O., Philadelphia and vicinity regarding its representation of certain City Employes," which are inconsistent with the provisions of this act shall remain in full force and effect so long as the present provisions of that ordinance are valid and operative.

43 P.S. §1101.2003. The parties do not argue that the Ordinance is invalid or inoperative.

3

not be resolved through the grievance procedure, the grievance was referred to the American Arbitration Association for selection of a neutral arbitrator. The arbitrator held a hearing on March 10, 2020, at which representatives of District Council 47, the City, and District Council 33 were present, represented by counsel, and had the opportunity to examine and cross-examine witnesses and introduce documents, after which the parties submitted post-hearing briefs. *Id.* at 220a.

At the hearing, District Council 47 presented testimony of its president, who testified in part that because District Council 47 is considered to be the professional employee union, and the job description for graphic design specialists was changed to include a college degree, she concluded that this job classification should "now more appropriately be part of District Council 47." R.R. at 221a. The City presented testimony from its director of the Mayor's Office of Labor Relations, who testified to the "history of tensions" between District Council 47 and District Council 33 with respect to work that District Council 47 "viewed as professional work." *Id.* District Council 33 presented the testimony of its attorney, who testified as to his role in prior contract negotiations and the history of "white collar employees" who have remained grandfathered in District Council 33's blue-collar bargaining unit. *Id.* The arbitrator provided summaries of this witness testimony and found that each witness testified "credibly, and without contradiction." *Id.*

As a threshold matter, the arbitrator considered the arbitrability of the grievance, which sought "essentially to transfer" the City's graphic design specialists "from one bargaining unit to another bargaining unit." R.R. at 224a. To decide whether the grievance was arbitrable, the arbitrator considered the text of the CBA, and also considered "other factors" which govern whether arbitral action in this matter was permissible. *Id.* First, the arbitrator reviewed what the underlying

4

grievance "is, and what it is not." *Id.* The arbitrator determined that the grievance was not seeking a unit clarification, in which the moving party seeks to establish the unit placement of "*newly created* job positions" and would be within the Pennsylvania Labor Relations Board's (PLRB) jurisdiction. Because the position of graphic design specialist existed for more than 60 years within District Council 33, and only the job requirements changed on a prospective basis, the arbitrator concluded this grievance was not a unit clarification. *Id.* The arbitrator also found the matter was not analogous to a Section 10(k) proceeding under the National Labor Relations Act,[6] "where the parties are disputing the assignment of specific job duties to employees of one union or craft, versus another union or craft." *Id.* None of the parties here argue that the grievance should be subject to a unit clarification proceeding, or that it is analogous to a Section 10(k) proceeding.

The arbitrator then determined that "by its grievance, District Council 47 has essentially made a demand for recognition, making this a representation issue." R.R. at 225a. He then turned to the argument of District Council 47 that this dispute should be decided pursuant to the procedure set forth in the CBA's contractual Bargaining Unit Work (BUW) clause. *Id.* at 225a. The City and District Council 47 are parties to a CBA master agreement covering the period from July 1, 1992, through June 30, 1996, which was renewed through various Memoranda of Agreement, including the Memorandum of Agreement dated July 25, 2000, which added the BUW clause. *Id.* at 25a-203a. The BUW clause provides:

> The City and the Union recognize their joint obligation to
> provide service to the public in the most economical and

---

[6] Section 10(k) of the National Labor Relations Act, 29 U.S.C. §160(k), provides jurisdiction to the National Labor Relations Board over unfair labor practices where a labor organization seeks to require an employer to assign particular work to employees in one labor organization over another labor organization.

efficient manner, and the Unions [sic] desire to have its members continue to perform traditional bargaining unit work, and work that is related to or resembles traditional unit work. In order to accomplish this goal, it may be necessary to evaluate which bargaining unit should perform certain tasks. When such assignment becomes necessary, the appointing authority for the affected agency will meet with a representative of the Union at the Union's request to discuss the assignment.

Any dispute over assignment of work shall be based on the economy, efficiency and past assignments of work of this nature. Excluded from this process shall be assignments made on a temporary basis (less than 30 days).

An arbitrator selected from a panel of neutrals will determine the appropriate classification of employees who are to perform the disputed work.

*Id.* at 97a.

The arbitrator was not persuaded by District Council 47's argument that this grievance should be decided pursuant to the procedure in the BUW clause. "This clause was first incorporated into the [CBA] in 2000. The contractual language appears to me to essentially be a procedure for resolving disputes involving newly created positions. That is not the situation here." R.R. at 225a. In support, the arbitrator found that the BUW clause requires an arbitrator to make the work assignment "based on economy, efficiency and past assignments of work of this nature," which favors the continuation of graphic designer specialists' work by members of District Council 33. *Id.* The arbitrator also noted that absent the repeal of the City's Ordinance, the relationship between the City and District Council 33 "appears to have been cemented." *Id.* at 226a. Further, the arbitrator explained that the PLRB has granted deference to maintaining the status quo in situations like this, where employee representation was not merely based on voluntary recognition but through an ordinance. *Id.* Additionally, the arbitrator observed that this was not a

6

matter of first impression, and the issue is governed by decisions of our Court and of our Supreme Court, which "concluded that the Courts would not sanction "attempted 'raids' by rival labor organizations on units which were ratified" by local ordinance.[7]  *Id.*  Based on all the evidence presented, the arbitrator concluded that District Council 47 had not met its burden to establish the arbitrability of the issue in dispute, finding that he lacked jurisdiction to decide the matter.  *Id.*

District Council 47 filed a petition to vacate the award with the trial court, which denied the petition because District Council 47 "failed to prove that the arbitrator's award did not draw its essence from the language of the [CBA]."  R.R. at 579a.  District Council 47 then appealed the trial court's November 4, 2020 order to this Court.

This Court recently stated and summarized the essence test standard of review applicable to this case.

> The essence test is an exceptionally deferential standard, because binding arbitration is a highly favored method of dispute resolution.  An arbitrator's award, however, must draw its essence from the collective bargaining agreement.  Pursuant to the "essence test," an award should be upheld

---

[7] In support, the arbitrator cited the PLRB decision of *Philadelphia Fraternal Order of Correctional Officers v. City of Philadelphia*, 30 PPER 30178 (1999), and *Philadelphia Fraternal Order of Correctional Officers v. Rendell*, 701 A.2d 600 (Pa. Cmwlth. 1997), *aff'd* 736 A.2d 573 (Pa. 1999).  In *Philadelphia Fraternal Order of Correctional Officers v. City of Philadelphia*, the PLRB held that Section 2003 of the PERA establishes District Council 33 as the exclusive representative of its member employees, and that "no other employe organization may utilize the provisions of [the] PERA to replace AFSCME as the exclusive representative."  30 PPER 30178 at 2.  In *Philadelphia Fraternal Order of Correctional Officers v. Rendell*, our Supreme Court affirmed this Court's decision and held that the Philadelphia ordinance protecting District Council 33 from challenges by a rival union did not violate the employees' rights to free speech, free association or equal protection.  736 A.2d at 574.  District Council 47 does not argue that the arbitrator erred in relying on these decisions, or that the Ordinance or Section 2003 of the PERA are unconstitutional.  District Council 47 focuses on the arbitrator's interpretation of the CBA and the application of the BUW clause.

7

if (1) the issue as properly defined is within the terms of the collective bargaining agreement, and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Rose Tree Media School District v. Rose Tree Media Secretaries and Educational Support Personnel Association-ESPA, PSEA-NEA*, 157 A.3d 558, 564-65 (Pa. Cmwlth. 2017) (internal citations omitted).

District Council 47 argues that the arbitration award fails the essence test because it is not rationally derived and fails to flow logically from the CBA. District Council 47 argues that the arbitrator exceeded his authority when he altered the plain language of the BUW clause in the CBA to apply to newly created positions. District Council 47 further argues that the arbitrator made critical findings not supported by information in the record. The City responds that the arbitrator's finding that the BUW clause did not apply to this grievance was rationally derived from the CBA, relying on the arbitrator's finding of fact that the grievance was a thinly disguised demand to involuntarily transfer the graphic design specialist position to District Council 47, rather than a demand to transfer any graphic design specialist work or tasks to District Council 47. Given this finding, the City responds that the Ordinance, Section 2003 of the PERA, and the cases interpreting those provisions divest the arbitrator of jurisdiction to rule on this grievance. District Council 33 also responds that the arbitration award rationally flows from the CBA and satisfies the essence test. District Council 33 further responds that reviewing courts may not second-guess an arbitrator's findings of fact and may not reject them simply because they may disagree with them, citing *Rose Tree Media Secretaries*

8

*and Educational Support Personnel Association-ESPA, PSEA-NEA v. Rose Tree Media School District*, 136 A.3d 1069, 1078 (Pa. Cmwlth. 2016).

Under the applicable deferential standard of review, we cannot conclude that the arbitration award was not rationally derived from the CBA. The arbitrator analyzed the dispute and found it was not related to the potential transfer of bargaining unit work, but rather to the transfer of the graphic design specialist position from District Council 33 to District Council 47, which is not permitted under the Ordinance, Section 2003 of the PERA, or the cases interpreting these provisions. When interpreting the CBA, the arbitrator is

> not confined to the express terms of the agreement. Our court has stated that an arbitrator's award may draw its essence from the collective bargaining agreement if the arbitrator's "interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.

*Danville Area School District v. Danville Area Education Association, PSEA/NEA*, 754 A.2d 1255, 1260 (Pa. 2000). Because the arbitrator reviewed the CBA in light of the legal prohibitions against District Council 47's attempt to transfer an existing position from District Council 33 to itself, as well as the history of disputes between the units over the transfer of work but not over transfer of existing positions, the arbitration award is rationally derived from the CBA.

District Council 47's related argument that the arbitration award violates the essence test because it relies on facts not in the record is similarly misplaced. District Council 47 argues that the arbitrator made factual findings as to which unit should represent graphic design specialists, without providing it the chance to present evidence on the merits. The City responds that any such comments made by the arbitrator in his decision were made in passing, did not affect the

outcome, and would relate to the merits only if he had jurisdiction, which he did not. As already discussed, the arbitrator relied on the parties' testimony about the kind of disputes that have been arbitrated under the BUW clause, and found that the current grievance did not fall under its provisions. When the award is rationally derived from the CBA, the Court should not "reject an award on the ground that the arbitrator misread the contract." *Millcreek Township School District v. Millcreek Township Educational Support Personnel Association*, 210 A.3d 993, 1006 (Pa. 2019). We agree with the trial court that the arbitration award drew from the essence of the CBA. "The [a]rbitrator considered the history of the [g]raphic [d]esign [s]pecialist designation and came to the conclusion that [District Council 47's] grievance was substantially a reclassification of an existing employee designation which was not arbitrable given the parties extensive bargaining history, the CBA, [the] PERA and the PLRB." R.R. at 588a-89a.

Further, District Council 47 argues that the arbitrator erred in preventing it from presenting evidence as to the merits of the grievance when he bifurcated the hearing, first considering arbitrability, and, if arbitrable, then considering the merits. District Council 33 responds that the American Arbitration Association rules governing the grievance proceeding give the arbitrator discretion to conduct the proceedings with a view to expediting the resolution of the dispute, including authority to bifurcate proceedings. R.R. at 502a. We cannot agree with District Council 47 that the arbitrator erred in bifurcating the hearing to address the jurisdictional issue first. American Arbitration Association rules, which the parties do not dispute apply to the grievance proceeding, permit the arbitrator to bifurcate hearings. *Id.* In *Davis v. Chester Upland School District*, 786 A.2d 186 (Pa. 2001), our Supreme Court dismissed a declaratory judgment action filed by employees

10

seeking recall rights after furlough, when they did not avail themselves of arbitration as provided in their collective bargaining agreement. The Supreme Court held that the question of whether the dispute was arbitrable under the collective bargaining agreement "must, at least initially, be left to an arbitrator to decide." *Id.* at 188-89.

The City argues in the alternative that District Council 47 waived its right to rely on the BUW clause as the jurisdictional basis for arbitration because it did not raise it in its demand for arbitration. We need not address this argument as we have already determined that the arbitrator had authority to decide the arbitrability of the grievance, and that he did so based on the CBA, the PERA, court decisions, and the history of the parties. Applying the deferential essence test standard of review here, we cannot conclude that the arbitration award was not rationally derived from the CBA.

Accordingly, we affirm the trial court's order dismissing District 47's petition to vacate.

MICHAEL H. WOJCIK, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

AFSCME District Council 47,      :
Local 2187,      :
     :
     :
         Appellant      :
     :
       v.      : No. 1242 C.D. 2020
     :
The City of Philadelphia and      :
AFSCME District Council 33      :

# **O R D E R**

AND NOW, this 13th day of April, 2022, the Order of the Philadelphia County Common Pleas Court dated November 4, 2020, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge