IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2002 Session

# THE POLK COUNTY BOARD OF EDUCATION v. THE POLK COUNTY EDUCATION ASSOCIATION

**Appeal from the Chancery Court for Polk County**
**No. 6885      Jerri S. Bryant, Chancellor**

**FILED JUNE 21, 2002**

**No. E2001-02390-COA-R3-CV**

A declaratory judgment action was filed by the Polk County Board of Education ("The Board") seeking a declaration that it did not have to arbitrate two grievances filed by the Polk County Education Association ("Association") after the Board unilaterally implemented two new policies. The policies at issue involve increasing the workday of the teachers by 30 minutes by requiring teachers to perform "bus duty", and implementation of a dress code. The Trial Court held that lengthening the workday was a matter suitable for arbitration, but concluded the dress code was not. We affirm the Trial Court's conclusion as it pertains to lengthening the workday, but vacate and remand for further proceedings its decision on the arbitrability of the dress code.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Vacated in Part; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Richard L. Colbert, Nashville, Tennessee, for the Appellant the Polk County Education Association.

D. Scott Bennett, Chattanooga, Tennessee, for the Appellee the Polk County Board of Education.

# OPINION

## Background

Pursuant to the Education Professional Negotiations Act, the Board and the Association entered into collective bargaining in June of 2000, which resulted in a Memorandum of Agreement ("Agreement"). In this declaratory judgment action filed in March of 2001, the Board petitioned the Trial Court for relief pertaining to two issues. The first issue centers around the length of the school day for teachers. According to the Complaint, the Director of Schools instructed school principals to require teachers to work "bus duty". The Board claims the reason for this change was students were arriving at school early and staying late without adequate supervision. The teachers had to arrive at school 15 minutes earlier and leave 15 minutes later to perform this bus duty, thereby expanding their workday by 30 minutes. State law requires teachers to work a minimum of seven hours per day. According to the Board, after deducting the teachers' 30 minute lunch period because this was not "working time", the 30 minute expansion of the workday brought the teachers up to the statutorily required seven hour workday. The Association filed a grievance and eventually sought arbitration over the lengthening of the workday. The Board sought declaratory relief claiming this issue was not suitable for arbitration for two reasons. First, the lengthening of the school day was consistent with the terms of the Agreement; and second, increasing the workday to seven hours was statutorily required.

The second issue involves the implementation of a dress code for the teachers. The Board claims the Director of Schools sought input from a group of teachers concerning implementation of a dress code, and developed a policy based on this input. The Board claims soon thereafter, the Association filed a grievance claiming the dress code was a mandatory subject of bargaining and was not authorized by the existing Agreement. The Association ultimately sought arbitration over this issue as well. The Board sought a declaration that implementation of a dress code was a permissive subject of bargaining, not in violation of the terms of the Agreement and, therefore, not subject to arbitration.

In its answer, the Association admitted there was a dispute regarding the arbitrability of these two issues, but steadfastly maintained both issues were subject to arbitration. The Association argued that pursuant to the terms of the Agreement and applicable law, the Board could not unilaterally increase the length of the working day or implement a dress code.

As relevant to this appeal, the Agreement contains the following provisions:

**Article VIII: Grievance Procedures**

**A.      Definitions**

1.       A grievance is defined as an allegation that there has been a violation, misinterpretation, or misapplication of a state law or of a provision of this agreement.

* * * *

4.       An **Association Grievance** shall be a grievance by the Association concerning its rights specifically granted by this agreement or a class grievance involving two or more members of the negotiation unit.

5.       There shall be no appeal from the arbitrator's decision which shall be final and binding on all parties to this agreement.

The grievance procedure sets forth 5 steps to be followed when a grievance has been filed. The fifth step allows the grievance to be submitted to arbitration if it has not been resolved after utilization of the previous four steps. Other relevant provisions of the Agreement are:

**C.**     **Unencumbered Time**

1.       Teachers shall have unencumbered time every day for lunch. The administration shall arrange a schedule for all teachers who wish to share or divide duties so that children are supervised at all times. There shall be a minimum of 30 minutes of lunch each school day. These provisions will no longer be in effect and will be re-negotiated within 10 days if state law pertaining to duty-free lunch is changed.

3.       Each principal shall inform the teachers of his/her policy concerning other allowable breaks including planning time activities. No employees shall leave his/her working campus without the permission of the supervising principal [except during duty-free lunch] and must sign in and out. . . .

**I.**     **Limitations**

* * * *

2.	The principal of a school shall systematically, equally and fairly assign bus duty and other duties necessary for the operation of the program during the regular school day. . . .

**L.	Basic Employment Conditions**

\* \* \* \*

2.	Teachers shall work a maximum of seven [7] hours per teaching day.

The Board filed a motion for summary judgment and the Association filed a motion to dismiss for failure to state a claim. As pertinent to this appeal, the Trial Court concluded the length of the school day was an appropriate mandatory subject for bargaining pursuant to Tenn. Code Ann. § 49-5-611. The Trial Court further determined that:

Anything above the state minimum requirements on length of school days is clearly a condition of employment and therefore subject to negotiation by the teacher's union. The interpretation of the on-duty, off-duty time, and the assigned duties of the teachers as relevant to interpreting the length of time of the workday is the job of an arbitrator in this situation. The Court therefore dismisses the Board of Education's Petition concerning the issue of the length of workday.

In contrast to working conditions, dress codes are not subject to mandatory negotiation.

This Court hereby holds that this is a permissible subject of negotiation, not a mandatory condition of employment. Since it was not covered by the collective bargaining agreement, the Board of Education had the authority to implement the dress code. The Board of Education is not required nor obligated to arbitrate this grievance.

The dress code does not constitute a condition of employment because of its impact on managerial prerogatives. The school board has an interest in seeing that its employees are appropriately dressed.

Therefore the school board is not required to arbitrate this issue and is entitled to judgment on this issue as a matter of law.

The Board appeals the Trial Court's conclusion that the issue of whether the workday was expanded in violation of the Agreement is a proper matter for arbitration. The Association

appeals the Trial Court's conclusion that the dress code was a permissive subject of bargaining and within the managerial prerogative of the Board. We affirm the decision of the Trial Court with respect to the arbitrability of the increase in the length of the workday, and vacate and remand the decision pertaining to the dress code.

## Discussion

The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000):

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-

> moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.
>
> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89. A fact is "material" for summary judgment purposes, if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)(quoting *Byrd v. Hall*, 847 S.W.2d at 211).

We first address the issue pertaining to the length of the school day. The Board argues the length of the school day is a non-delegable duty and is not subject to arbitration or negotiation. The Board relies on several statutory provisions, the first being Tenn. Code Ann. § 49-5-201(a)(1) which provides that it is the duty of the teacher to: "Open and close the school each day at the time fixed by the board of education." The Board apparently asserts this statute gives it the absolute right to set the working hours of the teachers. The Board also relies on Tenn. Code Ann. § 49-5-612 (a) which provides as follows:

> (a) The scope of a memorandum of agreement shall extend to all matters negotiated between the board of education and the professional employees' organization; provided, that the scope of such agreement shall not include proposals contrary to:
>
> (1) Federal or state law or applicable municipal charter;
>
> (2) Professional employee rights defined in this part; and
>
> (3) Board of education rights contained in this title.

The Board argues the 30 minute increase in the working day brought the teachers up to the statutorily required seven hour workday. The Board maintains that allowing a challenge to this increase via a claimed violation of the terms of the Agreement would result in the Agreement being used to violate state law, which is prohibited by Tenn. Code Ann. § 49-5-612(a)(1). The third statutory provision the Board relies upon is Tenn. Code Ann. § 49-5-604(a), which provides the Education

Professional Negotiations Act does not modify or repeal "[t]hose rights and responsibilities of boards of education, superintendents and professional employees as contained in this title …."

Lastly, the Board argues the 30 minute lunch period is "duty free" and not time actually worked, and, therefore, cannot be counted towards the statutorily required seven hour workday. The Board relies on Tenn. Comp. R. & Regs. 0520-1-3-.03(5), which provides:

> (5) Duty Free Luch Period. In schools providing a lunch period for students, all teachers shall be provided each day with a lunch period during which they shall not have assigned duties. The lunch period for each teacher shall be at least the same amount of time as that allowed for students.

In support of its motion for summary judgment, the Board filed the affidavit of William C. Wade ("Wade"), the Director of Schools for the Polk County Board of Education. In this affidavit, Wade asserted that during this "duty free" lunch period, the schools "assign no duties to their teachers whatsoever. Teachers are even free to leave campus, go home, run personal errands, etc." Mark Allen ("Allen"), the Chairman of the Polk County Board of Education also submitted an affidavit wherein he stated the teachers were "off duty for one-half hour during their 'duty free lunch.' During this duty-free lunch, teachers are free to come and go from school, run personal errands, etc. The Board of Education may not assign duties to teachers during this duty-free lunch."

In response to the Board's motion, the Association filed the affidavit of Barbara McReynolds ("McReynolds"), a teacher in the Polk County School System and immediate past president of the Polk County Education Association. In this affidavit, McReynolds admits that while no *specific* duties are assigned:

> Most teachers work during their thirty minute lunch period doing such things as grading papers, giving make-up tests, dealing with disturbances in the hallways, exchanging ideas and information with other teachers, monitoring students, counseling students with problems, planning classroom and other student activities, obtaining supplies needed for classes, organizing their classrooms, and preparing forms and paperwork which must be submitted to the school office or the central office. Thus, even though teachers do not have specific duties assigned by the Board during their state-mandated "duty-free" lunch, most are performing work-related functions and duties during that time.

While the Association does not dispute that state law requires teachers to work at least seven hours, it argues since the teachers are performing work related functions during their "duty-free" lunch, the 30 minute lunch period must be counted towards the seven hour minimum requirement. This being the case, the Association maintains the state minimum requirement of a

seven hour workday is and has been met, and, therefore, the lengthening of the school day by an additional 30 minutes was an illegal unilateral change in working conditions and a violation of the terms of the Agreement.

In our opinion, the issue of whether the workday was improperly lengthened turns on whether the teachers are in reality required to use their 30 minute lunch break in a manner which benefits the Board or school system, or whether they are in fact free to use their 30 minute lunch period as they see fit. *If* the Board is correct and teachers are free to use this 30 minute lunch period in any manner they want, *and* if they voluntarily choose to perform work related functions during their lunch period, then the 30 minute lunch period should not count as time worked toward the seven hour minimum state requirement. On the other hand, if teacher work load and lack of other available free time during the normal workday is such that the teachers have no viable alternative but to utilize their 30 minute "duty-free" lunch period to perform work related functions, then it is entirely appropriate to count this time as time worked toward fulfilling the seven hour minimum requirement.

The issue we must decide on appeal is whether the above determination should be made by a court of law or an arbitrator. The Board maintains an arbitrator would have to construe various state laws which makes arbitration an improper forum. The Board relies upon the decision of the United States Supreme Court in *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S. Ct. 391 (1998)(as amended October 21, 1999). In *Wright*, the following is found:

> In collective bargaining agreements, we have said, "there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" … That presumption, however, does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than courts *to interpret the terms of a CBA*…. This rationale finds support in the very text of the LMRA, which announces that "final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising *over the application or interpretation of an existing collective bargaining agreement*." … The dispute in the present case, however, ultimately concerns not the application or interpretation of any CBA, but the meaning of a federal statute. The cause of action Wright asserts arises not out of contract, but out of the ADA ….

*Id.* at 77-79, 119 S. Ct. at 395-96 (emphasis in original)(citations omitted). The Association asserts that the propriety of lengthening the school day involves a factual interpretation of the Agreement and, therefore, is proper for arbitration.

There is no conflict between state law requiring teachers to work a minimum of seven hours per day and the provision in the Agreement requiring teachers to work a maximum of seven hours per teaching day. Read together, the teachers' workday under the applicable statute and the Agreement is exactly seven hours. We agree with the Board that it cannot negotiate for a workday of less than seven hours. The Board, however, is perfectly free to enter into negotiations, as it did, with the Association pertaining to whether the workday will be more than seven hours. The Board and the Association did exactly that and negotiated a workday of seven hours as reflected in the Agreement.

We believe the underlying issue of whether the lunch period should be counted as time worked is a factual issue. This determination cannot be made without looking to the terms of the Agreement. For example, the Agreement states teachers shall work a "maximum of seven hours." What the parties intended by this language and whether this provision has been violated is certainly something that must be discerned. This determination (and perhaps others) will involve an interpretation of the Agreement and is purely factual. We believe the Trial Court properly concluded interpretation of the "assigned duties of the teachers as relevant to interpreting the length of time of the workday is the job of an arbitrator in this situation." We likewise affirm the decision of the Trial Court that anything above the seven hour minimum requirement on length of workday is a working condition pursuant to Tenn. Code Ann. § 49-6-611.

The second issue centers around implementation of the dress code for teachers. The Trial Court concluded a dress code was a permissive subject of bargaining and since it was not covered by the Agreement, the Board had the authority to unilaterally implement the policy. The Trial Court further concluded a dress code was not a condition of employment because of its impact on managerial prerogatives. Tenn. Code Ann. § 49-5-611(a), which sets forth the mandatory subjects of bargaining, reads as follows:

> **49-5-611. Scope of negotiations.** – (a) The board of education and the recognized professional employees' organization shall negotiate in good faith the following conditions of employment:
>
> (1) Salaries or wages;
>
> (2) Grievance procedures;
>
> (3) Insurance;
>
> (4) Fringe benefits, but not to include pensions or retirement programs of the Tennessee consolidated retirement system;
>
> (5) Working conditions;
>
> (6) Leave;

(7) Student discipline procedures; and

(8) Payroll deductions.

When the Trial Court rendered its judgment, the Legislature had offered no express guidance on what was meant by the term "working conditions" as this term was not defined in the Act. On April 17, 2002, the Legislature passed 2002 Tenn. Pub. Acts 683, which became effective on May 1, 2002. With this amendment, the Legislature defined the term "working conditions" as "those fundamental matters that affect a professional employee financially or the employee's employment relationship with the board of education." Because the Trial Court did not have available to it this legislative guidance on what is meant by the term "working conditions", we vacate the judgment of the Trial Court that the dress code is not a working condition, and remand this case to allow the Trial Court the opportunity to determine whether the dress code is a working condition in light of the 2002 Tennessee Public Acts 683.

## **Conclusion**

We affirm the decision of the Trial Court with respect to the arbitrability of the increase of the length of workday, vacate the decision pertaining to the dress code, and remand this cause to the Trial Court for further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, the Polk County Board of Education.

_____
D. MICHAEL SWINEY, JUDGE

-10-